SCHEYTT, Respondent, v. GALLATIN VALLEY MILLING CO., Appellant.

(No. 3,893.)

(Submitted March 14, 1918. Decided April 16, 1918.)

[172 Pac. 321.]

*Personal Injuries—Master and Servant—Negligence—Evidence —Insufficiency—Res Ipsa Loquitur.*

Personal Injuries — Master and Servant — Negligence — Evidence — Insufficiency.
1. The burden which is on him who alleges negligence to prove it by substantial evidence is not sustained by testimony which furnishes the basis for two equally permissible conclusions as to what caused the injury, one of which speaks negligence on defendant's part, while the second points to some other efficient proximate cause.

Same.
2. *Held,* that a judgment for plaintiff, a roustabout in a flour-mill and connecting warehouse, who at times had also acted as foreman in the warehouse and who was injured by the fall of sacks of flour alleged to have been so negligently piled in tiers as to become out of plumb, was not sustained by his testimony, which left it in doubt whether the accident was the result of the unstable condition of the pile of sacks, or whether plaintiff carelessly pulled them down upon himself in his attempt to gain the top of the pile without the aid of a ladder.

Same—*Res Ipsa Loquitur*—Inapplicability of Doctrine.
3. In the absence of evidence showing with any degree of certainty how the accident referred to above occurred, the doctrine of *res ipsa loquitur* was not applicable.

[As to accident as evidence of negligence, see notes in 6 Am. St. Rep. 792; 20 Am. St. Rep. 490; 30 Am. St. Rep. 736.]

*Appeals from District Court, Gallatin County; Ben B. Law, Judge.*

ACTION by Henry O. Scheytt against the Gallatin Valley Milling Company, a corporation. From a judgment in favor of plaintiff and an order denying its motion for a new trial, defendant appeals. Reversed with direction to dismiss the action.

*Mr. Geo. Y. Patten,* for Appellant, submitted a brief and argued the cause orally.

An employee assumes the risk incident to dangerous conditions when they are constant and of long standing, and the

danger is so obvious as to suggest itself to a person in possession of his faculties and of ordinary intelligence. (*Killeen* v. *Barnes-King Dev. Co.,* 46 Mont. 212, 127 Pac. 89.) Where the plaintiff's case raises the presumption that he has been guilty of contributory negligence, he must assume the burden of showing that he is not guilty of such negligence. (*Nelson* v. *City of Helena,* 16 Mont. 21, 39 Pac. 905; *Lynes* v. *Northern Pacific R. Co.,* 43 Mont. 317, Ann. Cas. 1912C, 183, 117 Pac. 81; *Harrington* v. *Butte, A. & P. Ry. Co.,* 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8; *Longpre* v. *Big Blackfoot Milling Co.,* 38 Mont. 99, 99 Pac. 131.) Cases involving facts similar to the one at bar, in which the injured man was held to have assumed the risk, are: *Lewis* v. *Koller & Smith,* 186 Fed. 403, where a box fell and caused the injury; *Chicago, Rock Island & Peoria Ry. Co.* v. *Grubbs,* 97 Ark. 486, 134 S. W. 636, and *Sampson* v. *Southern Ry. Co.,* 154 N. C. 51, 69 S. E. 683, where the injuries were received from ties falling from piles; *Hodgson* v. *Michigan Cent. R. Co.,* 146 Mich. 627, 109 N. W. 1125, and *Foley* v. *Grand Rapids Gaslight Co.,* 127 Mich. 671, 87 N. W. 53, where the injuries resulted from cave-ins in trenches; *Paoline* v. *J. W. Bishop Co.,* 25 R. I. 298, 55 Atl. 752, a beam rolled and fell while it was being raised, and caused the injury to plaintiff. (See, also, *Little* v. *Hyde Park Elec. L. Co.,* 191 Mass. 386, 77 N. E. 716; *Steeples* v. *Panel & Folding Box Co.,* 33 Wash. 359, 74 Pac. 475; *Consolidated Gas Elec. L. & P. Co.* v. *Chambers,* 112 Md. 324, 26 L. R. A. (n. s.) 509, 75 Atl. 241; *Goddard* v. *Interstate Tel. Co.,* 56 Wash. 536, 106 Pac. 188.)

While it is a general rule of law that the master is charged with the duty of furnishing a safe place to work, the above cases recognize the exceptions to this rule. (*New Omaha Thompson-Houston Electric Light Co.* v. *Rombod,* 68 Neb. 54, 93 N. W. 966, 97 N. W. 1030; *Soderburg* v. *Wells,* 57 Wash. 281, 106 Pac. 751; *Williams* v. *Choctaw etc. Ry. Co.,* 149 Fed. 104, 79 C. C. A. 146; *Nortonville Coal Co.* v. *Brooks,* 30 Ky. Law Rep. 671, 99 S. W. 357; *Nashville C. & St. L. R. Co.* v. *Hayes,* 17 Tenn. 680, 99 S. W. 362; *Bruiletts Creek Coal Co.* v. *Pomatto,* 172 Ind.

288, 88 N. E. 606; *McNulty* v. *Power,* 203 Mass. 320, 89 N. E. 557; *Texas & P. Ry. Co.* v. *Lewis* (Tex. Civ.), 133 S. W. 1086; *Cole* v. *Spokane Gas & Fuel Co.,* 66 Wash. 393, 119 Pac. 831; *Leary* v. *Houghton County Traction Co.,* 171 Mich. 365, 45 L. R. A. (n. s.) 359, 137 N. W. 225; *Hartigan* v. *Deerfield Lbr. Co.,* 85 Vt. 133, 81 Atl. 259; *Seininski* v. *Wilmington Leather Co.,* 3 Boyce (26 Del.), 288, 83 Atl. 20.)

Where the danger incident to an employment is alike open and obvious to the master and servant, both are on an equality, and the master is not liable for an injury resulting from the danger. (*McFadden* v. *City of Philadelphia,* 248 Pa. 83, 93 Atl. 827; *Price* v. *Lee Lumber Co.,* 125 La. 888, 51 South. 1025; *Wabash R. Co.* v. *Ray,* 152 Ind. 392, 51 N. E. 920; *Welch* v. *Carlucci Stone Co.,* 215 Pa. 34, 7 Ann. Cas. 299, 64 Atl. 392; *Ramm* v. *Galveston, H. & S. A. Ry. Co.* (Tex. Civ.), 92 S. W. 426; *Tham* v. *J. T. Steeb Shipping Co.,* 39 Wash. 271, 81 Pac. 711; *Fort Worth S. Y. Co.* v. *Whittenburg,* 34 Tex. Civ. App. 163, 78 S. W. 363.)

It is also an elementary rule of law, applicable here, that where the tool, appliance or method used by the servant is of a simple, common, ordinary character, the nature of which is easily understood, and with which the servant is familiar, he cannot charge his master with any injury which he receives, but assumes the risk or danger himself. (*Philip Carey Roofing & Mfg. Co.* v. *Black,* 129 Tenn. 30, 51 L. R. A. (n. s.) 340, 164 S. W. 1183; *Bougas* v. *Eschbach-Bruce Co.,* 77 Wash. 347, 137 Pac. 472.)

*Mr. H. S. Farris* and *Mr. C. E. Carlson,* for Respondent, submitted a brief; *Mr. Carlson* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for personal injuries sustained by plaintiff during the course of his employment by defendant as roustabout in one of its warehouses at Belgrade, in Gallatin county.

The defendant owns and operates a flour-mill at Belgrade. In connection with it, it owns warehouses used for the purpose of storing flour and other mill products. Plaintiff had been in the service of the defendant for three years and about eight months. During one year of this time he had occupied the position of foreman in charge of the roustabout crew consisting of from two to six men, but about a year before the time of the accident he had been superseded by Frank Lynn and thereafter served as a roustabout. While engaged in this capacity his duties required him to perform any labor necessary about the mill and warehouses, including the moving of sacks of flour from the mill to the warehouses and piling them therein, and, when occasion demanded, taking the sacks from the piles and loading them in cars for shipment. The duties of the foreman were to supervise the roustabouts in the performance of their duties, including the handling and piling of flour in the warehouses and the inspection of the piles from time to time to see that in the process of settling they did not get out of plumb and become likely to fall, thus creating a source of danger to those who might be working in proximity to them or engaged in loading cars from them. The accident occurred on August 5, 1914. Lynn had been absent from July 20 in attending to other duties assigned him. He had returned about August 1. During his absence the plaintiff had superintended the other roustabouts in the building of a pile of 98-pound sacks in one of the warehouses which adjoined the mill. It consisted of four or five tiers, each made up of two rows of sacks laid end to end, the joints being broken as in laying brick in a wall. The ends of them were tied or locked by sacks laid crosswise. The end of the tiers constituted the end, and the sides of the outer tiers the side, of the pile. It was twelve or fourteen feet high and extended up near the slant of the roof of the warehouse. Plaintiff had personally assisted in building this pile. Mr. Parkins, the secretary and head bookkeeper of the defendant, had charge of the business office, including general charge of the warehouses. On August 5 he delivered to plaintiff an order to clean a car on

the warehouse track of the Milwaukee railroad and load it with flour, to be taken out about noon. Lynn, the foreman, was not then in the warehouse but was nearby. Without notifying him of the receipt of the order or awaiting instructions from him, plaintiff proceeded in company with Edgar Bertelson, another roustabout, to execute the order. While Bertelson was bringing up a truck to receive a load of sacks, plaintiff climbed up the side of the pile to pass them down. He had climbed up to the top of the pile near the roof, when the sacks began to roll and fall. He attempted to catch hold of the rafters to allow the sacks to go under him but was not able to do so. He then jumped and, being caught by the falling sacks, suffered a comminuted fracture of the femur of his left leg and a minor injury to the ankle.

The negligence alleged in the complaint is (1) that the [1, 2] defendant had permitted the tiers of sacks comprising the pile to be so negligently built that while the outside tier was apparently straight and safe, the tier immediately behind it was standing in an uneven, unsupported, crooked, leaning and otherwise defective condition, so that it caused the first tier to fall upon the plaintiff as he attempted to climb the pile; and (2) that defendant had failed to inspect the tiers of sacks in the pile and had omitted to warn the plaintiff of its dangerous condition. The answer, admitting the occurrence of the accident and consequent injuries of the plaintiff, denies that defendant was guilty of negligence. It also alleges the usual defenses of contributory negligence and assumption of risk. The trial resulted in a verdict and judgment for the plaintiff. The defendant has appealed from the judgment and an order denying its motion for a new trial.

Counsel challenges the integrity of the judgment on the ground that the evidence is insufficient to justify the verdict, and that the court therefore erred in denying defendant's motion for a new trial. Among others he makes the contention that there is no substantial evidence to establish the negligence alleged in respect to the condition of the pile of sacks. After

a careful study of the record we have concluded that this contention must be sustained.

The plaintiff was himself the only witness who testified in his behalf as to the circumstances of the accident; and as his testimony was not aided in any way by that of any of defendant's witnesses, we must look to it alone to find support for the charge of negligence. As presented in the transcript, his testimony is not clear. The following brief synopsis of it, added to the foregoing statement, with the excerpts quoted below, includes all to be found therein on the subject. He stated: That the pile had been standing for about two weeks; that when he went to it he climbed up the middle of the side; that he went up until, he judges, his waist line was about even with the top; that he then saw that it was moving; and that he saw the first tier moving toward him, and a part of the second. We quote: "Q. Was the second tier leaning against the forward tier? A. Yes, sir. * * * I then tried to run my hand into the rafters, but couldn't reach it, so as to let the flour go from under me. I then jumped and the flour fell over on to me. Q. Did any of the second tier fall, Mr. Scheytt? A. Some. Q. Do you know how much of the second tier fell? A. No, I do not." Again: "I don't know how much of the first tier of flour came with me when I fell, nor the second tier either. If they were leaning any, they are bound to come together. I hadn't touched the second row that made up the first tier as I got up on top. I stated that I had gotten up so that my waist line was about even with the top. In starting to climb the pile I did not run or jump; it wouldn't do any good to jump because you have got to go up the side. I didn't look around; I just walked up to the pile. It is not always easy to go on a pile of flour; but when climbing you have got to walk right up." Again: "Those tiers of flour should be as straight as possible; there is very little space, if any, between—probably a little at the bottom; there is very little space at the top—ought not to be any—they should fit tight. There is sufficient space so that you can look up between them and see if the tiers are leaning against each

other.   When I came in and looked at this pile I gave a glance at it, and it appeared to me to be safe—I mean by that that it was perfectly safe to climb up.  The forward tier appeared to be straight.  *  *  *  These piles of flour get out of plumb quite often, and the foreman's inspection discloses these defects. He would then order the men to repile or brace it.  *  *  * There are piles of flour in all three of the warehouses, or two of them most of the time.  Almost daily during that period of one year that I was foreman, I had occasion to inspect these piles, and I became quite skilled in noticing whether or not the flour was piled up properly or whether it was leaning, or whether it required repiling.  As a matter of fact, I became quite skilled in that respect.  I would go along the ends of the piles and look between the tiers and see whether or not the tiers were leaning.  At that particular pile there was no flour in the center [of the warehouse] at all.  There is a vacant space there that there is no flour in at all.  In other words, there was a space of about ten feet in front of the end between the piles.  *  *  * When I went into the warehouse in the morning of August 5, 1914, I did not inspect the pile to see whether it was safe; I just made a casual glance and then went up the center of the pile; it wasn't my duty to inspect it.  I wasn't on the end of the pile; I went up along the side.  I didn't go to the end of the pile at all.''

The most that can be said of this testimony is, that it amounts to a mere conclusion by the plaintiff that the second tier was out of plumb because the outer tier fell bringing a part of it down.  It negatives the idea that he ascertained this fact by observing the condition of the pile before he attempted to climb up on it; and the position in which he was standing at the time he discovered it in motion also negatives the idea that he could then observe whether the second tier was leaning.  If there was no space between the tiers at the top, as he said should have been the case if the pile had been properly built—and he nowhere suggests that this was not the fact—it was manifestly impossible for him to see that the second or inner tier was out of plumb

and leaning against the outer one. Nor is there any suggestion in his testimony that tends to exclude the idea that in attempting to climb to the top by thrusting his hands and feet between the sacks, as he must have done—he did not use a ladder or other device to assist him—he pulled the sacks down upon himself. Thus, whereas it was incumbent upon him to furnish the jury substantial proof of the defective and dangerous condition resulting from defendant's negligence, he left them to speculate as to the cause of the injuries. That this is the probative value of the evidence is emphasized by the uncontradicted testimony of Mr. Fisher, the general manager of the defendant. When he heard of the accident he went immediately to the warehouse, where plaintiff was lying on the floor, and upon asking him how he had been hurt, received the answer, "that he thought he was careful, but probably he may have been a little careless, he thought probably it was his own fault." When the evidence is in this condition, it will not support a recovery. The burden is upon him who alleges negligence to prove it by substantial evidence (*Reino* v. *Mineral Land Dev. Co.*, 38 Mont. 291, 99 Pac. 853; *Byrnes* v. *Butte Brewing Co.*, 44 Mont. 328, Ann. Cas. 1913B, 440, 119 Pac. 788); and this burden is not sustained if the evidence furnishes the basis for two equally permissible conclusions as to what caused the injury, one of which speaks negligence on the part of the defendant, while the other is wholly inconsistent with it, and points to some other efficient proximate cause. This court has repeatedly so held. (*Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515; *Olsen* v. *Montana Ore Pur. Co.*, 35 Mont. 400, 89 Pac. 731; *Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Winnicott* v. *Orman*, 39 Mont. 339, 102 Pac. 570.)

While, as noted in the foregoing statement, one of the duties of the foreman was to inspect the piles from time to time, which would imply the duty also, in proper cases, to warn the employees who were required to work upon or near them of their dangerous condition, there is no evidence in the record that Lynn had neglected this duty. True, he testified that he had

not received any instructions on the subject; but he also testified that it was his custom to observe the different piles from time to time, that he had looked over this particular pile on August 3 before the accident, and that it was apparently in a safe condition, because none of the tiers were leaning. In speaking of the two rows of sacks making up the outside tier, he stated further that by reason of the way the flour was piled, it was impossible for the second tier to be in a leaning condition while the first or outside tier was straight. This testimony was not contradicted in any way. In face of these categorical statements, the jury could not have found from the fact alone that the pile fell that the defendant failed in its duty to inspect. But whether it did or not is wholly immaterial in view of the conclusion stated above. If the pile was not in a dangerous condition, no amount of inspection would have discovered any danger and so render a warning necessary.

Counsel for plaintiff contends that the doctrine of *res ipsa* [3] *loquitur* applies, and hence a case was made for the jury, citing *Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29. This doctrine, however, can have no application to cases of this character. (*Barry* v. *Badger,* 54 Mont. 224, 169 Pac. 34.) "That rule, as applied to falling objects, covers cases where the occurrence is of such an unusual and extraordinary character that it would not happen except for want of due care, or that the cause of the fall was something over which the defendant had absolute and complete control; and in the nature of things there could be no fall except in the negligent doing of some act peculiarly within the knowledge and control of the defendant." (*Samardege* v. *Hurley-Mason Co.*, 72 Wash. 459, 130 Pac. 755.) As stated above, there is no evidence showing with any degree of certainty how the accident occurred and whether it was the result of the unstable condition of the pile or whether the plaintiff carelessly pulled the sacks down upon himself in his attempt to gain the top of the pile as he did.

Since the evidence is wholly insufficient to sustain the verdict and it is apparent that the plaintiff produced at the trial all in

his possession or available, it would serve no purpose to order another trial. For the same reason a determination of the several other contentions made by counsel is wholly unnecessary. The judgment and order are reversed and the district court is directed to dismiss the action.

*Reversed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.