ALFRED LENCIONI, PLAINTIFF AND APPELLANT, *v.* R. L. LONG, DEFENDANT AND RESPONDENT.

No. 10196.

Submitted April 11, 1961. Decided May 1, 1961.

361 P.2d 455.

Graybill, Bradford & Graybill, Great Falls, Leo C. Graybill, Jr., Great Falls, argued orally, for appellant.

Richard B. Conklin, Great Falls, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment of nonsuit entered in the district court of Cascade County, Montana.

From the complaint itself, the testimony of the plaintiff on the witness stand, the salient facts are rampant with a reeking libidinous atmosphere that should never permeate a a claim of alleged negligence, and damages for an injury sustained by the appellant.

On or about May 23, 1958, appellant was employed as a bartender in a building located about five miles west of the City of Great Falls and contiguous to U. S. Highway 89. This establishment was further identified as the "Five Mile Inn". Appellant's working shift was from 8:00 p. m., to 4:00 a. m. This establishment was owned by respondent Long.

The complaint alleges this haven of male relaxation was in truth and fact, an "after hours" bar on the ground floor and the second floor was the business address of from one to three ladies of easy virtue—for a price.

The laws of Montana strictly and firmly preclude either operation, vocation, enterprise or venture.

To the end that some security could be maintained, there were three peep holes, two covered with glass and the third unprotected.

The nature and illegality of this place was well-known to appellant as he had worked there as a bartender from time to time since the Fall of 1952.

Appellant testified on direct examination as follows:

"A. Well, I was hired to go to work in there as bartender, and then 2:00 o'clock he [respondent Long] closes the door, and then we stay there and wait until somebody drives in. So soon a car pulls in, and he goes out and looks outside. If it is a customer he opens and lets them in. So I fix him a drink, and we talk first and then

he says—we had a buzzer under the bar, and he says, 'I will call the girl downstairs, so just buzz her.' *That was my buzzer,* and the girl comes down and we sit there and talk and have a few drinks. Then first thing you know, they talk business, and they go upstairs.''

Appellant continuing:

''* * * The customer say, 'Well honey, I—' he say, 'Let's go upstairs. Well, how much? Oh, $10.00 and up.' Well, you know its not hamburgers.''

The record discloses that after 2:00 a. m. in the morning of May 23, 1958, appellant bartender and respondent owner were seated on the bar stools waiting for a ''live one'' to appear. The area around the establishment was well-lighted and a car drove up and discharged one, R. J. Hitson, and another man. Respondent determined that these two men were intoxicated; that being intoxicated they would probably create trouble and appellant was told not to admit them by the respondent.

Appellant put his eye to the unprotected peep hole and told Hitson that the place was closed. Hitson then shot the contents of a tear gas cartridge into appellant's right eye.

Appellant thereafter commenced this action against the respondent for the injuries thus inflicted upon him. Following a trial before a jury which heard the appellant's testimony, witnesses and proof, upon motion of the respondent a nonsuit was granted by the court.

Appellant assigns error:

(1) That the court erred in considering appellant's negligence because such negligence is barred in this case by the provisions of the Workmen's Compensation Act;

(2) That the court erred in ordering a nonsuit because the parties are not *in pari delicto.*

These assignments of error present in essence, the same contentions appellant made in the court below.

Upon this statement of fact the only question to be decided

138

by this court is "Did the trial court err in granting a nonsuit to the respondent?"

 This record is devoid of either allegation or proof of any one of the three established legal principles necessary to sustain the cause of the appellant. Appellant was obliged to prove either (1) negligence of the respondent; (2) proximate cause; or (3) freedom from the taint of being *in pari delicto.*

 As to the first question there was no negligence upon the part of the respondent. *Appellant was not directed to put his eye to the peep hole.* That appellant was injured by the intentional, malicious, criminal act of an independent third party cannot be charged against respondent. See Jonosky v. Northern Pac. Ry., 57 Mont. 63, 187 P. 1014, and Cassaday v. City of Billings, 135 Mont. 390, 340 P.2d 509. In the forty-year period between these two cases, this court has consistently held that actionable negligence arises only from a breach of legal duty.

Appellant in his brief cites the California case of Gardner v. Industrial Accident Commission, 73 Cal.App.2d 361, 166 P.2d 362, as supporting his first assignment of error. In this case the bartender was acting within the scope of his employment and was also acting in conformity and obedience to the laws of the state relating to selling, furnishing or giving any alcoholic beverage to any obviously intoxicated person.

If appellant's contention has merit, then the respondent would likewise be liable under the Workmen's Compensation Act for the prostitutes acting in the scope of their employment on the second floor. We think this contention wholly without merit.

 It has been well-said that a defendant who could not foresee any danger of direct injury resulting from his conduct, or any risk from an intervening force is not negligent. Siterak v. Montgomery, 32 Wash.2d 794, 203 P.2d 1062.

The United States Supreme Court in Atchison, Topeka &

Santa Fe Ry. v. Calhoun, 213 U.S. 1, 9, 29 S.Ct. 321, 323, 53 L.Ed 671, quoting from Pollock on Torts (8th ed.), 41, said:

"* * * if men went about to guard themselves against every risk to themselves or others which might, by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things."

As to the question of proximate cause, the rule covering this element is found in 38 Am.Jur., Negligence, § 71, p. 728:

"* * * Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual. The rule applies *a fortiori* to criminal acts. Therefore, as the facts are ordinarily against a defendant presented, no recovery can be allowed for an injury which resulted from the criminal act of a third person, although there existed at the time a condition which made the act possible or less difficult to accomplish, and which was produced by the negligence of the defendant."

Anent the question of appellant being *in pari delicto, each time he served an alcoholic beverage after 2:00 a. m.,* each time *he pushed his buzzer* to alert the upstairs prostitute that economic prosperity was arriving, he violated one or more of the penal statutes of Montana. He was a willing accomplice of the respondent.

Section 94-204, R.C.M.1947, defines "accomplices" as:

"All persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have ad-

vised and encouraged its commission * * * are principals in any crime so committed.''

Under the facts alleged in the complaint in this case the sole purpose of after-hours employment was to violate the penal statutes of Montana, and the following case law applies:

This court in Melville v. Butte-Balaklava Copper Co., 47 Mont. 1, 130 P. 441, held that if a violation of the statute by the employer is negligence, it is equally so on the part of the employee; and if the disobedience, on one hand, is the proximate cause of the injury, so the dereliction, on the other hand, must be regarded as a contributing proximate cause, for the disobedience is concurrent, and the injury is the result of the concurrent causes which operated to the same end. In such a case the employee cannot recover, because, in alleging the injury, he must, of necessity, allege his own fault. It is the general rule that an action never lies when the plaintiff must base his claim, in whole or in part, on the violation of a criminal or penal law of the State. To the same effect is the Montana case of Jackson v. Lomas, 60 Mont. 8, 198 P. 434, which states that the law leaves both parties where it finds them, equally in the wrong, although injury resulted to the plaintiff from their combined wrongs.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.