JULIE L. BROWN, Plaintiff and Appellant, v. ALLEN LeROY REEL, Defendant and Respondent.

No. 11158.
Submitted November 9, 1966. Decided December 20, 1966.
421 P.2d 454.

382

Wiggenhorn, Hutton, Schiltz & Sheehy,. John C. Sheehy (argued), Billings, for appellant.

Lyman H. Bennett, Jr. (argued), Bozeman, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict in favor of the defendant in a personal injury action arising out of an automobile collision.

The plaintiff-appellant is Julie L. Brown, a passenger in one of the automobiles involved in the collision, and will be referred to as plaintiff. Defendant respondent is Allen LeRoy Reel, the driver of the other automobile involved in the collision, and will be referred to as defendant.

The plaintiff makes seven specifications of error, which raise the following issues:

(1) Whether the district court committed reversible error in submitting to the jury the issue of contributory negligence;

(2) Whether the district court committed error by refusing plaintiff's additional instruction defining the term "preponderance of the evidence"; and

(3) Whether the district court committed error in giving its. instruction No. 7.

The record before this court reveals the following facts. This action arises out of an automobile collision which occurred at the intersection of 11th Street West and Harrison Street in Bozeman, Montana, on February 1, 1964, at about 7:30 p. m.

The intersection, located on the campus of Montana State University, is a "T shaped" intersection, with Harrison Street terminating at 11th Street West. Harrison Street runs generally in an east and west direction. For a distance of approximately 200 to 250 feet, Harrison Street slopes downgrade to the intersection with 11th Street West, which runs generally in a north and south direction. At this intersection there were no traffic lights or any traffic control devices for traffic pro-

·ceeding on 11th Street West. Westbound traffic on Harrison Street was controlled by a stop sign located on the northeast ·corner of the intersection.

At the time of the collision the intersection and the approaching streets thereto were covered with snow or ice and were extremely slippery.

Plaintiff and her husband, Melvin Brown, are residents of Billings, Montana.

Plaintiff was a passenger in the front seat of an Oldsmobile automobile driven by her husband. Two girls, one the plaintiff's daughter and the other a friend of plaintiff's daughter, were riding in the rear of the Oldsmobile automobile. The Browns were taking the two girls to the fieldhouse at Montana State University to attend a basketball game.

Mr. Brown was driving his Oldsmobile automobile west on Harrison Street approximately 10 miles an hour when he reached that portion of Harrison Street that slopes downward to 11th Street West. Since Mr. Brown was not familiar with the area, he did not notice the stop sign until he reached the point where Harrison Street begins to slope. He applied the brakes of his automobile at this point, but they had no effect due to the slippery condition of Harrison Street. His automobile slid down Harrison Street and out into the intersection, striking a Cadillac automobile traveling north on 11th Street West. When Mr. Brown realized that his automobile was not going to stop prior to arriving at the intersection, he cautioned the passengers of the impending collision.

After the collision between the Oldsmobile and the Cadillac, Mr. Brown backed his automobile onto Harrison Street to allow the traffic on 11th Street West to flow freely. The two girls in the back seat and Mr. Brown then all got out of the car, but plaintiff remained in the Oldsmobile. The two girls proceeded to the basketball game.

A few minutes later the defendant was driving his Volkswagen automobile west on Harrison Street. Defendant had

four passengers with him, one in the front seat and three in the rear seat. Defendant and his companions were also headed to the basketball game at the fieldhouse.

At the same point on Harrison Street where Mr. Brown had noticed the stop sign, the defendant noticed the Oldsmobile parked on Harrison Street. Defendant's speed at this point was between 10 and 15 miles an hour. Defendant began to pump his brakes and to steer to the left slightly, but he was unable to stop the Volkswagen, again due to the slippery condition of Harrison Street. The Volkswagen came in contact with the Oldsmobile. The right hand door of the Volkswagen hit the left rear corner of the Oldsmobile.

The manner in which the Oldsmobile was parked on Harrison Street was in dispute at the trial. Plaintiff and her husband claimed that the Oldsmobile was parked parallel to the curb and about even with the stop sign. Defendant and one of his passengers testified that the Oldsmobile was parked at an angle and that it occupied the entire westbound lane of Harrison Street and a portion of the eastbound lane. Two other passengers in defendant's automobile testified that the Oldsmobile was parked at an angle.

On cross-examination Mr. Brown testified that he told defendant's father "that I had just been in an accident and that it was almost a blameless accident, that I was negligent in going down the street the way I did and I think he [defendant] got trapped into the same situation." On redirect examination Mr. Brown testified that his automobile was "Absolutely out of control" and that he "was kind of pointing and steering."

Reviewing these facts we find (1) that Harrison Street was extremely slippery from 200 to 250 feet before it intersected 11th Street West; (2) that two automobiles, both traveling about 10 miles per hour, had been unable to stop while traveling over this section of Harrison Street even though both drivers had taken the ordinary steps to stop; (3) that plaintiff's husband had considered his accident "blameless"; and (4) that

plaintiff's husband had considered that defendant had been "trapped into the same situation" which caused his accident.

We move on to a consideration of the evidence introduced concerning plaintiff's injury. Plaintiff testified that she properly braced herself for the collision with the Cadillac automobile and thus suffered no ill effect from that accident. However, the plaintiff testified that the jolt caused by the Volkswagen running into the Oldsmobile was unexpected and caused her head to snap and then her neck to snap causing her alleged injury.

Following the accident, plaintiff spent about an hour and a half at the Country Club in Bozeman eating dinner. She and her husband spent the night in Bozeman. The next day, which was a Sunday, the plaintiff went skiing. The skiing occasioned about three or four different tow rides and skiing trips down the hill. Around 4:00 p. m. on Sunday plaintiff left for her home in Billings.

The plaintiff testified that her neck was sore following the Oldsmobile-Volkswagen collision. She went to her doctor on the Monday following the accident and received an appointment for Tuesday. A swelling on plaintiff's neck appeared about six days after the accident. She called this swelling to the attention of her family doctor who in turn referred her to Dr. McGahan, a Billings surgeon. Dr. McGahan then treated plaintiff and performed the required operation.

Dr. McGahan's deposition was read at the trial and portions of his deposition are as follows:

"A. My opinion in this case is that Mrs. Brown had a small tumor of her thyroid gland for some time. This was being observed by her family physician. After the accident I felt that the small tumor rapidly enlarged in size. She was struck with such force that she could easily have injured the adenoma, causing hemorrhage into the adenoma. This is not an uncommon occurrence and has been seen in the past by me. This pa-

tient is a very intelligent patient and her history is usually very accurate.

"Q. Doctor, is the history that she gave you also a factor in your opinion here? A. Yes, it is * * *.

"Q. And what about the history was a significant factor? A. The fact that she was in an accident in which she had violent trauma to her neck and her head following by rapid growth of the tumor in the neck. * * *

"Q. Did Mrs. Brown tell you of two accidents or just one? A. I cannot recall. I think it was just of the one. * * *

"Q. And as far as you know you don't have any specific recollection of her having specifically told you about two automobile accidents, one week before? A. No, I don't."

Defendant's counsel also proposed for Dr. McGahan's consideration a hypothetical question which outlined the Oldsmobile-Cadillac collision and the Oldsmobile-Volkswagen collision and asked it if could be said with reasonable medical certainty which of these accidents caused the trauma that brought on the hemorrhage. To this hypothetical question Dr. McGahan answered that it could not be stated with reasonable medical certainty which accident caused the hemorrhage.

Two doctors testified for the defendant. The substance of their testimony was that if some trauma did cause a hemorrhage in the adenoma of the thyroid, the hemorrhage would take place immediately or within a few hours and the swelling would appear at least within 24 hours. However, by plaintiff's own testimony, swelling did not appear for some six days after the accident.

Reviewing the medical evidence, we find that plaintiff had a pre-existing tumor of her thyroid gland; that plaintiff's doctor's opinion of the cause of the hemorrhage was based upon information which he admitted in cross-examination was not fully complete; and that two doctors gave testimony which indicated that the accident or accidents could not have caused the plaintiff's injury.

The foregoing outline of the evidence presented to the jury readily demonstrates that there was substantial evidence to support the jury's verdict in this case. The jury was justified in reaching any of the following conclusions on the basis of the evidence presented:

1. Defendant was not negligent;

2. Defendant was negligent, but the plaintiff was not injured at all in either accident; and

3. Defendant was negligent, but the plaintiff was not injured as a result of defendant's negligence.

■  Thus, we come to a consideration of the first issue, Plaintiff contends that it was error for the district court to submit the issue of contributory negligence to the jury. If submitting the issue of contributory negligence to the jury was error, it was harmless error in this case; and harmless error is not sufficient to justify a reversal.

In Olson v. City of Butte, 86 Mont. 240, 250, 283 P. 222, 225, 70 A.L.R. 1352, this court stated: "On appeal, prejudice is never presumed, and a judgment will not be reversed merely because the lower court erred; in order to work a reversal, it must affirmatively appear that the error has prejudicially affected substantial rights of defendant on the merits of the case." Later in Cashin v. Northern Pac. Ry. Co., 96 Mont. 92, 116, 28 P.2d 862, 871, this court further commented: "Even under the common law, 'where it appears, from the evidence, that the verdict is so clearly right that had it been different the court should have set it aside, such verdict will not be disturbed merely for the reason that there is error found in the instruction.' "

Rule 61, M.R.Civ.P., is to the same effect and reads in part: "No error * * * in anything done or omitted by the court * * * is ground for * * * setting aside a verdict * * * or otherwise disturbing a judgment * * * unless refusal to take such action appears to the court inconsistent with substantial justice * * *."

In light of all the evidence presented at the trial of this case, we fail to see how plaintiff's substantial rights have been affected by the instruction on contributory negligence.

In regard to the second issue, plaintiff contends that the district court erred in refusing to give an additional instruction defining the term "preponderance of the evidence." The district court's instruction which defined the term "preponderance of the evidence" was submitted by the plaintiff. Plaintiff does not contend that this instruction was wrong, but plaintiff's brief states that the purpose of the offered instruction "was to advise the jury in a *negative way* that proof beyond reasonable doubt was not required of the plaintiff in this case." (Emphasis supplied.) It is not error to refuse to give an instruction in both its positive and negative sense.

Plaintiff's third contention is that the district court erred in giving its Instruction No. 7, which reads as follows:

"You are instructed that the burden of proof of the plaintiff in an action for damages for tortious wrong is not sustained, if the evidence furnishes the basis for two equally permissible conclusions as to what caused the injury, one of which speaks fault on the part of the defendant, while the other is fully inconsistent with it and points to some other efficient proximate cause."

The basic language of this instruction was taken from Scheytt v. Gallatin Valley Milling Company, 54 Mont. 565, 172 P. 321. Later cases of this court had made similar statements concerning proximate cause. Plaintiff contends that such an instruction is "only applicable where plaintiff's cause rests entirely upon indirect or circumstantial evidence." However, we do not find this limiting factor in any of the previous decisions. The district court did not err in giving Instruction No. 7.

We have considered each specification of error alleged by the plaintiff and deem them without merit.

Finding no error, we affirm the judgment appealed from.

MR. JUSTICES ADAIR, JOHN C. HARRISON, DOYLE and CASTLES, concur.