M. C. MANG, Plaintiff and Respondent, *v.* STANLEY
ELIASSON and IVANELLE ELIASSON, Defendants and
Appellants.

No. 11604.
Decided September 11, 1969.
Rehearing Denied October 1, 1969
458 P.2d 777.

Neil S. Keefer (argued), Billings, for appellants.

Thomas M. Ask (argued), Roundup, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

An appeal by defendants from a jury verdict and judgment for plaintiff in the amount of $10,174.98 in the district court of Musselshell County, Montana. Plaintiff brought the action to recover damages for a reduced yield of dryland alfalfa seed allegedly caused in 1967 by the negligence of defendants in allowing weeds from defendants' field to blow across fields of the plaintiff during a windstorm. Defendants answered denying any negligence, defending on the basis that damages sustained by plaintiff, if any, were not the proximate cause of plaintiff's injuries.

Plaintiff, among other lands, owns approximately 345 acres of dryland, located in two tracts at the north edge of Musselshell county along U. S. Highway 87, at the Winnett cut-off intersection. Of the land in question, tract #1 consists of approximately 290 acres, and is located immediately to the east

of Highway 87 and to the north of the Winnett road; tract #2 consists of approximately 55 acres, and is located approximately one mile east of the intersection and south of the Winnett road. The Winnett road angles in a generally northeasterly direction from Highway 87. Both tracts were planted to dryland alfalfa, a perennial raised in strips with approximately ten feet of summer fallow in between. In 1967, as was the usual practice, the alfalfa was first cut for hay and then allowed to grow, with the second cutting being harvested for seed. The first cutting for hay was in mid-July with the plant growth period for the seed crop being after that date. The date of the alleged injury to plaintiff was mid-October.

Defendants, on a portion of their land located approximately one-fourth mile west of Highway 87, raised wheat by the strip farm method. On this tract, there were eleven strips, each strip being approximately 12½ rods wide. During 1967, six strips were in summer fallow, with five strips being planted in winter wheat. Between defendants' land and plaintiff's tract #1, there was pastureland approximately one-fourth mile wide, three fences, two barrow pits, and Highway 87. Plaintiff's tract #2 was located aproximately one and one-fourth miles east of defendants' land and to the south of the Winnett road.

Plaintiff contends that defendants failed to cultivate their summer fallow in a proper manner, and negligently allowed weeds, consisting mainly of rough pigweed to grow thereon; that defendants negligently cultivated said summer fallow in early October with a one-way plow which loosened the weeds and left them lying on the field in such condition to be blown away by the wind; that defendants knew or should have known that the winds blow very strongly in said area from the west and southwest, and that if weeds were left loose on the ground, they would be blown over and across plaintiff's land, damaging his alfalfa seed and fences, and cause plaintiff's field to become seeded with weeds similar to those on defendants' land.

Defendants contend that the land in question had been summer fallowed twice during the summer, in May and again

in July; that in mid-September, half of the summer fallow had been plowed with a one-way plow to loosen the weeds; that a one-way plow partially buries the weeds as it turns them over; that on the night of October 18-19, 1967, a violent, unusual and unexpected windstorm arose, which storm was the worst in many years; that when the storm was over, many weeds had blown off defendants' summer fallow, both from that portion which had been cultivated and that which had not; that the wind was sufficiently severe to blow off cut, partially buried weeds and weeds that had not been summer fallowed and that the damage to plaintiff's alfalfa fields was caused by the violent and unusual windstorm, not by any negligent acts of defendants.

At the close of plaintiff's case, defendants made motions for a directed verdict, pursuant to Rule 50(a), M.R.Civ.P., and in the alternative, for summary judgment, pursuant to Rule 56(b), M.R.Civ.P. These motions were renewed at the close of all the evidence, in both instances being denied by the district court. Subsequently, defendants made motions for judgment notwithstanding the verdict, and in the alternative for a new trial. These motions were likewise denied by the district court.

Several issues have been raised on this appeal, but generally they resolve themselves into a single ultimate legal issue: Whether the district court erred in denying defendants' motions for a directed verdict. In discussing this issue, it is necessary to interrelate and answer the following question: Whether the plaintiff established a *prima facie* case that defendants were negligent in that they breached a legal duty owed to plaintiff. If this question is answered in the negative then the basic issue must be resolved in favor of the defendants. If answered in the affirmative plaintiff must prevail in all particulars. Accordingly, this opinion will treat the underlying question set forth above as the real issue presented for review herein.

Basically the reasonableness of the use of property by its owner must necessarily be determined from the facts and circumstances of each particular case as it arises by the application of appropriate provision or principles of law and the dic-

tates of mutual and reciprocal justice. Further, before negligence can be predicated on any given act, back of that act must be sought and found a duty to the individual complaining, the observance of which duty would have averted the injury. The burden is upon plaintiff to prove the existence of that duty, and a breach thereof, by substantial evidence. It has long been the rule, enunciated in 1925 in Fisher v. Butte Electric Ry. Co., 72 Mont. 594, 602, 235 P. 330, 332, that:

"To sustain a recovery, the evidence relied upon, whether direct or indirect, must be substantial—more than a mere scintilla. (Citing cases.) A verdict cannot rest upon conjecture, however shrewd, nor upon suspicion, however well grounded."

While the jurors are the sole judges of the facts, the question of whether or not there is substantial evidence in support of plaintiff's case is always a question of law for the court.

Section 19-103(16), R.C.M.1947, defines negligence as "* * * a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns." In other words, negligence is described as conduct which falls below the standard established by law for the protection of others against unreasonable risk and necessarily involves the concepts of reasonableness and foreseeability.

To sustain a cause of action based on alleged negligence, the plaintiff must prove both negligence and proximate cause. Jackson v. William Dingwall Co., 145 Mont. 17, 134, 399 P.2d 236; Thompson v. Llewellyn, 136 Mont. 167, 346 P.2d 561. Further, the essential elements of actionable negligence are the existence of a duty, the breach thereof and a resulting injury. Jackson v. William Dingwall Co., supra 145 Mont. at 134, 399 P.2d 236.

An additional test of actionable negligence is not what might have prevented a particular accident, but what reasonably prudent men would have done in the discharge of their duties under the circumstances as they existed at the time of the accident. Milasevich v. Fox Western Montana Theatre Corp.,

436

118 Mont. 265, 272, 165 P.2d 195. This Court, as early as 1918 in Scheytt v. Gallatin Valley Milling Co., 54 Mont. 565, 572, 172 P. 321, 323, speaking through Chief Justice Brantly, said:

"The burden is upon him who alleges negligence to prove it by substantial evidence (Citing cases.); and this burden is not sustained if the evidence furnishes the basis for two equally permissible conclusions as to what caused the injury, one of which speaks negligence on the part of the defendant, while the other is wholly inconsistent with it, and points to some other efficient proximate cause."

This proposition has repeatedly been upheld by this Court, most recently in 1966. Cf. Brown v. Reel, 148 Mont. 381, 388, 421 P.2d 454. In the instant case, plaintiff failed to sustain the burden of proving by substantial evidence that defendants breached a duty which resulted in the alleged injury or that defendants' acts were the proximate cause of the damages complained of.

It has been well said that a defendant who could not foresee any danger of direct injury resulting from his conduct or any risk from an intervening force is not negligent. Taylor v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co., 142 Mont. 365, 371, 384 P.2d 759; Lencioni v. Long, 139 Mont. 135, 361 P.2d 455.

In the same vein, we quote with approval the following language from Harper and James, The Law of Torts, Volume 2, at page 929:

" * * * Negligence is conduct involving an unreasonable risk of harm, and the test for determining whether a risk is unreasonable is supplied by the following formula. The amount of caution 'demanded of a person by an occasion is the resultant of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice to avoid the risk.'

"In striking this balance—that is, in weighing the likelihood of harm, the seriousness of injury and the value of the interest

to be sacrificed—the law judges the actor's conduct in the light of the situation as it would have appeared to the reasonable man in his shoes at the time of the act or omission complained of. Not what actually happened, but what the reasonably prudent person *would then have foreseen as likely to happen,* is the key to the question of reasonableness * * *.''

The element emphasized above—what the reasonably prudent person *would then have foreseen as likely to happen*—constitutes a limitation on the otherwise potentially infinite liability which would follow every alleged negligent act, and the law of torts holds a defendant amenable only for injuries to others which, to defendant at the time, were reasonably foreseeable.

Foreseeability is of prime importance in establishing the element of duty, and the question of defendants' negligence, if any, must of necessity hinge on the finding of a breach of that duty. If a reasonably prudent defendant can foresee neither any danger of direct injury nor any risk from an intervening cause he is simply not negligent.

If the chief element in determining whether defendant owes a duty or obligation to plaintiff is the foreseeability of the risk then that factor will be of prime concern in every case. Further, because it is inherently intertwined with foreseeability, such duty or obligation must necessarily be adjudicated only upon a case-to-case basis. Therefore, we do not now predetermine defendants' obligations in every situation by a fixed category; no immutable rule can be established to determine the extent of that obligation for every circumstance of the future. We do, however, define guidelines which will aid in the resolution of such an issue as is presented in the instant case.

As a classic opinion states: ''The risk reasonably to be perceived defines the duty to be obeyed.'' Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253. That is to say, defendant owes a duty with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent in the first instance.

Harper and James, The Law of Torts, supra, at page

438

1018, state the prevailing view. The obligation of defendants turns on whether:

" * * * the offending conduct foreseeably involved unreasonable great risk of harm to the interests of someone other than the actor. * * * [T]he obligation to refrain from * * * particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks and hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails."

In the instant case, the evidence fails to substantiate that defendants could reasonably have foreseen injury to plaintiff's seed crop, or that defendants' conduct created such a risk or hazard which was unreasonably dangerous and hence negligent in the first instance. There was nothing in the situation to suggest to the most cautious mind that defendants' act of summer fallowing in mid-September or for that matter as the plaintiff alleges the failure to summer fallow their land more frequently, in the absence of a strong wind, would cause the damage complained of. Plaintiff's own testimony indicated that he made no complaint to defendants about the weeds even though he knew about them. Surely if plaintiff apprehended any danger from the weeds or defendants' cultivating with a one-way plow, he would not have remained silent and taken no action. Thus plaintiff should not, by hindsight, be allowed to hold defendants to a higher degree of foreseeability than he himself had. And absent foreseeability, there is no duty owed by defendants to plaintiff. The range of reasonable apprehension defining defendants' duty to the plaintiff therefore was in no way exceeded. Plaintiff, having failed to carry the burden of proving a breach of duty which resulted in the alleged injury, failed to prove that defendants were negligent.

In view of our holding that plaintiff failed to show a breach of duty owed by defendants, thus failing to establish that defendants were negligent in the first instance, he has failed to establish any claim upon which relief may be granted and

accordingly, it is unnecessary to dwell on the law of causation. Further, the question of liability, being always anterior to the question of the measure of the consequences that go with liability, need not be discussed. If there is no tort to be redressed there is no occasion to consider what damages might be recovered if there was a finding of a tort.

We may assume without deciding that negligence, not at large or in the abstract but in relation to the plaintiff, would entail liability for any and all consequences however novel or extraordinary. Palsgraf v. Long Island R. Co., supra 248 N.Y. 339, 162 N.E. at 101. However, the consequences to be followed must first be rooted in a wrong.

Viewed in the light most favorable to plaintiff, we hold that under the rules above enumerated the evidence at the close of plaintiff's case wholly failed to show a breach of duty and therefore did not establish a *prima facie* case of negligence on the part of the defendants as alleged. Consequently, we hold that the trial court erred in its refusal to grant defendants' motion for a directed verdict.

The judgment of the district court is reversed.

MR. JUSTICES CASTLES, HASWELL, and BONNER, concur.

MR. JUSTICE JOHN C. HARRISON (dissenting).
I dissent.