No. 12186

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

J. L. FORD, Guardian Ad Litem of
JAY FORD, a Minor,

Plaintiff and Appellant,

-vs-

HENRY RUPPELL, WILLIAM FIREBAUGH
and GENERAL MOTORS, INC., Jointly
and Severally,

Defendants and Respondents.

---

Appeal from: District Court of the Second Judicial District,
Honorable John B. McClernan, Judge presiding.

Counsel of Record:

For Appellant:

Edward D. Yelsa argued, Anaconda, Montana.

For Respondent:

Poore, McKenzie and Roth, Butte, Montana.
Robert A. Poore argued, Butte, Montana.
James P. Melican, Jr. argued, Detroit, Michigan.

---

Submitted: May 17, 1972

Decided: DEC 1 8 1972

Filed: DEC 1 8 1972

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal is from a summary judgment in favor of the defendant General Motors, Inc. entered in the district court of the second judicial district, county of Silver Bow, Hon. John B. McClernan, presiding.

On October 25, 1969, plaintiff Ford, 19 years of age, was a sleeping passenger in a 1968 Corvette automobile, the subject of this litigation. The Corvette was being driven by defendant William Firebaugh. It was manufactured by defendant General Motors, Inc. The Corvette had just left Butte and was proceeding south on Highway 91, approaching Melrose, along a narrow winding roadway when it became involved in a sideswipe collision with a vehicle driven by defendant Henry Rupple. The Corvette went out of control and collided head-on with an oncoming vehicle, which resulted in personal injuries and extensive damage to the Corvette.

Following the accident, a personal injury action was filed on January 8, 1971 by plaintiff Ford against all defendants, Firebaugh, Rupple, and General Motors, based on the fact that Ford was unaware of the events before or during the accident which caused his injuries. Defendant Firebaugh was never served. General Motors was served through its designated agent on January 18, 1971. Defendant Rupple was served on March 31, 1971. Prior to service on Rupple, General Motors had moved the cause to the federal district court, Butte, on February 8, 1971, on the basis of diversity of citizenship.

After Rupple, as a Montana resident, appeared in the federal district court on April 22, 1971, the diversity of citizenship was defeated pursuant to the rule of Jensen v. Safeway Stores, 24 F.Supp. 585. On June 15, 1971, the parties stipulated that the action be remanded to Department I of the second judicial district, county of Silver Bow, where the action had originated.

On March 8, 1971, General Motors submitted its interrogatories to plaintiff, to which plaintiff responded on March 29, 1971. Following remand by the federal district court to the second judicial district, on July 27, 1971 defendant Rupple submitted a lengthy set of interrogatories to plaintiff, which were never answered by plaintiff. On July 12, 1971, plaintiff noticed the deposition of defendant Rupple for August 6, 1971. At the appointed time General Motors' counsel attended, but neither plaintiff, his counsel, nor the witnesses appeared. Subsequently, General Motors' counsel was advised by plaintiff's counsel to be in Anaconda for the taking of Rupple's deposition on October 6, 1971, but on that appointed date Rupple did not appear and no deposition was taken. In separate legal proceedings defendant Rupple, the motorist involved in the initial sideswipe with the Corvette, obtained a summary judgment against plaintiff Ford.

In September 1971, the district court set the instant case for trial on October 18, 1971.

On September 13, 1971, General Motors filed its motion for summary judgment with notice of hearing of its motion set for September 24, 1971. General Motors' motion for summary judgment was based upon the theory that a car manufacturer has no duty to manufacture a car which is safe from collisions such as the one involved here, and defendant General Motors was entitled to judgment as a matter of law.

On September 16, 1971, plaintiff submitted interrogatories and requests for admissions of fact to General Motors which were directed to determining the design, manufacturing processes, and specifications of the fiberglass body of the Corvette. Plaintiff's interrogatories and admissions were predicated on the theory of plaintiff's complaint against General Motors, that General Motors "so negligently and carelessly constructed, manufactured, assembled, and inspected said automobile (Corvette) as to endanger the occupants therein in the event of collision."

General Motors filed objections to plaintiff's interrogatories and requests for admissions contending that the request for admissions and interrogatories pertained to the same basic issue to which General Motors directed its motion for summary judgment and that if defendant's motion for summary judgment was meritorious then the request for admissions and interrogatories was irrelevant. Hearing on General Motors objections was set to be heard on the same day as its motion for summary judgment, September 24, 1971.

After hearing oral arguments and receiving briefs, the district court held that there was no duty of General Motors owed to plaintiff and entered judgment dismissing plaintiff's complaint against General Motors. From that judgment, plaintiff appeals.

Plaintiff contends the primary issue on appeal is the question of whether or not an absence of a genuine issue of negligence was presented to a sufficient degree to justify the granting of summary judgment to General Motors.

Essentially, the issue is whether the district court was correct in granting defendant General Motors summary judgment. The issue of substantive law in this determination is---did the defendant, General Motors, breach any duty owed the plaintiff, proximately causing plaintiff's injuries?

The authority for granting summary judgment is Rule 56(c), M.R.Civ.P., which provides in pertinent part:

> "* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* * *"

In determining the burden of proof, this Court in Kober & Kyriss v. Billings Deac.Hosp., 148 Mont. 117, 121, 417 P.2d 476, quoted with approval 6 Moore's Federal Practice, § 56.15[3], p. 2335:

> "'* * * the moving party for summary judgment has
> the burden of showing the absence of any genuine
> issue as to all the material facts, which, under
> applicable principles of substantive law, entitle
> him to judgment as a matter of law.'"

See also: Byrne v. Plante, 154 Mont. 6, 459 P.2d 266.

Plaintiff argues that since general negligence was pleaded against all defendants, further discovery, such as defendant Rupple's deposition, must be taken to dispose of all material facts concerning the affect of the initial sideswipe on the maneuverability of the Corvette, prior to the head-on impact. This contention is not correct for two reasons, (1) defendant General Motors can only be held in the lawsuit if there is a duty to the plaintiff which has been breached, and (2) the discovery, including plaintiff's deposition, has effectively confined the issue to the singular legal determination of whether or not defendant General Motors owed plaintiff a duty of reasonable care in design of the Corvette, so as not to subject plaintiff to unreasonable risk of injury or an enhancement of injury in the event of a head-on collision with another vehicle. There is no disagreement that this is an issue of law for court determination.

In more simple and concise terms, this lawsuit involves the "second collision" theory of negligence, i.e. the collision of the passenger with the interior part of the automobile which follows the automobile collision. Impact and causation of the initial collision is not part of the consideration of fault or duty in the "second collision"; and damages are generally enchancement of injury due to alleged faulty design or construction.

The legal community in recent years has signaled the rise of the theory of negligence encompassing the "second collision". Two cases are standard-bearers for divergent legal attitudes regarding the duty of automobile manufacturers: (1) Evans v. General Motors Corporation, (1966 C.A.7th), 359 F.2d 822,824,825, cert. den. 385 U.S. 836, 87 S.Ct. 83, 17 L ed 2d 70, for the restrictive view, and (2) Larsen v. General Motors Corporation,

(1968 C.A.8th), 391 F.2d 495, 502,503, for the expansive view. See also annotation 42 ALR3d 560.

In Evans, the plaintiff alleged that General Motors was negligent in designing the frame of its 1961 Chevrolet station wagon. The car was manufactured without perimeter frame rails which were being used in many other cars. The complaint alleged that because the "X" type frame would not adequately protect occupants during a side impact collision, defendant had created an unreasonable risk of serious injury. The court stated:

> "A manufacturer is not under a duty to make his
> automobile accident-proof or fool-proof * * *".

The court held as a matter of law on the duty aspect, that the manufacturer's duty did not extend to the particular design precaution which plaintiff deemed to be unreasonable. It further held that the danger to be avoided was obvious to all, since the intended purpose of an automobile did not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possiblity that such collisions may occur.

In Larsen, the steering column of plaintiff's Corvair protruded beyond the forward surface of the front tires. Plaintiff complained that the rearward displacement of the steering shaft in a head-on collision was much greater on the Corvair than on cars designed to protect against such displacement. Defendant, General Motors, relied on the Evans "crashproof" argument to rebut the contention. Although the court in Larsen agreed that it was beyond the state of the art to produce a crashworthy car, it stated that such an argument was irrelevant. The court in Larsen concerned itself with the manufacturer's ability to foresee that many of the cars which it produced would be involved in accidents and whether it was possible to design vehicles which would not increase the risk of serious injuries resulting from these accidents, and held:

> "We perceive of no sound reason, either in logic
> or experience, nor any command in precedent, why
> the manufacturer should not be held to a reasonable

duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. * * *

"This duty of reasonable care in design rests on common law negligence that a manufacturer of an article should use reasonable care in the design and manufacture of his product to eliminate any unreasonable risk of foreseeable injury. The duty of reasonable care in design should be viewed in light of the risk. While all risks cannot be eliminated nor can a crash-proof vehicle be designed under the present state of the art, there are many commonsense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here."

A second argument advanced by General Motors in both Evans and Larsen and again in the instant case, is the utilization of the doctrine of abnormal use. This argument relies on the well-established principle that a manufacturer's liability for negligence is restricted to situations where the product is used "for a purpose for which the manufacturer should expect it to be used". 2 Restatement of Torts 2d, § 395.

In Evans the court held:

"The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur."

In Larsen the court held:

"While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. * * * Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable."

In conjunction with the two above cited federal circuit cases, we have examined the limited number of cases available on the subject of defect enhanced injuries and find that some courts have held under the Larsen rationale that specific defects were actionable such as cases involving shatter-proof glass, gearshift levers, and ash tray defects. Most jurisdictions avoid the strict liability concept and breach of warranty and apply

- 7 -

general negligence principles. However, steering assembly, seat defects, heater location, front end design, door latch and others were denied under the Evans rationale. 42 ALR3d 567,568.

Generally the particular defects involved in these cases do not seem to bear on the results reached by the courts, nor do the courts that have taken the Larsen view develop the problem beyond the fact that the initial accident is reasonably foreseeable to the manufacturer, who should exercise due care or reasonable care in design or manufacture to eliminate unreasonable risk of foreseeable injury. While the courts denying recovery generally hold that the duty being obvious to all and collision not within the intended purpose, foreseeability created no duty when claimed defects did not contribute to the initial accident.

It has been further suggested that the best or proper or most effective solution to this recognizable problem is by legislation, not necessarily a sure or quick solution, as there is none, but possibly the most reliable and uniform method to accommodate the fifty states with standardization of design improvements to be placed on the manufacturers. Some cases cite the National Traffic and Motor Vehicle Safety Act, (1966), 15 U.S.C. §§ 1381-1426, which appears to be an effective beginning in the area of establishing design standards. This approach has been criticized as inadequate, industry controlled, and an escape hatch for courts not wanting to deal directly with the problem.

With a full appreciation of the principle that manufacturers should be held to as safe a design and construction as is reasonably possible to protect the public, we also recognize the difficulties that attend the proposed application of the principle on the facts of this case under Montana law.

The cases applying this principle under common law negligence standards recite that collisions with or without fault of the user are clearly forseeable in normal use and will result in injury producing impact and the "second collision" of the passenger with the interior part of the automobile is also foreseeable. Hence,

duty and liability on the manufacturers in the event of faulty design. However, after having established the principle they immediately retreat into undefined sanctuaries of qualification which dilute the principle and add no help to its application. For example, it excludes the collision with water, which is as foreseeable as any and occurs more frequently than some and could enhance danger or injury by defective design.

These cases further qualify that the manufacturer is not an insurer and not required to design accident-proof machines, just avoid _unreasonable_ risk of injury. This all seems to infer that the duty imposed is qualified by circumstances of some kind and not based entirely on reasonable foreseeability. Fleming, The Law of Torts, 3rd ed. 1965, 140, has this to say:

> "* * * if foresight of risk is a _necessary_ condition, it is by no means also a _sufficient_ condition of liability * * *. Admittedly some occasional judicial dicta seem to insinuate that foresight offered a test by which the existence of a duty of care can be logically inferred. Yet nothing could be further from the truth." (Emphasis added).

Prosser, Law of Torts, 4th Ed.,/ p. 326 contains an extensive discussion on all aspects of duty but observes the formula of duty to be:

> "You must take reasonable care to avoid acts or ommissions which you can reasonably foresee would be likely to injure your neighbor[s] * * * persons who are so closely and directly affected by my act that I ought reasonably to have them in contemplation as being so affected when I am directing my mind to the acts or omissions which are called in question.
>
> "As a formula this is so _vague_ as to have little meaning, and _as a guide to decision it has no value at all_." (Emphasis added.)

_Prosser_ further states our problem in the application of foreseeability and duty at p. 254:

> "In 1928 something of a bombshell burst upon this field, when the New York Court of Appeals, _forsaking_ 'proximate cause,' stated the issue of _foreseeability_ in terms of duty." Palsgraf v. Long Island R.Co., 248 N.Y. 339, 162 N.E. 99. (Emphasis added).

_Prosser_ does not reject this principle, but recognizes the problems attendant to it.

In Mang v. Eliasson, 153 Mont. 431, 458 P.2d 777, this Court rejected any doctrine of abstract foreseeability and affirmed the doctrine of reasonable foreseeability, but in that case found no necessity to reach the law of "causation" absent a finding of duty. However, causation was most recently discussed in terms of proximate cause and the "but for" rule affirmed in DeVerniero v. Eby, _____Mont._____, 496 P.2d 290,293, 29 St.Rep. 273, 278, in this language:

> "Proximate cause is a twofold legal concept which may limit liability depending upon the existence of (1) an intervening act and (2) the unforeseeability of that intervening act. This Court stated in Sztaba v. Great Northern Ry., 147 Mont. 185, 195, 411 P.2d 379, 385:
>
> "'Causation is a fact. It is important to determine causation first to avoid its confusion with the issues to follow. This is not a relationship between negligence and injury, but rather a causal relation between conduct and hurt, both of which are factual concepts. It is only after the causal relationship, duty, and its scope are found that the negligence issue is reached. 61 Col.L.R. 1401.
>
> "'The test most generally employed in determining causation is the "but for" test. Montana has adopted this test in numerous cases.
>
> "'Proximate cause is one "which in a natural and continuoussequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred." Stroud v. Chicago, M. [&] St.P. & P.Ry. Co., 75 Mont. 384, 393, 243 P. 1089, 1092.'" (Emphasis added.)

The principle urged by plaintiff under the facts of this case falls into the area of "abstract foreseeability" condemned in Mang and fails to meet the law in relation to causation as it exists in Montana.

The judgment of the district court is affirmed.

_Sam B Daly_
Associate Justice

- 10 -

We Concur:

_James G. Harrison_
Chief Justice

_Frank I. Haswell_

_John Conway Harrison_

Associate Justices.