No. 14491

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

ALBERT SCHAFER and DONNA SCHAFER, Parents
and natural guardians of BETTY MAE SCHAFER,

Plaintiffs and Appellants,

-vs-

STATE OF MONTANA, DEPARTMENT OF
INSTITUTIONS, MOUNTAIN VIEW SCHOOL,

Defendants and Respondents.

---

Appeal from: District Court of the Second Judicial District,
Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

For Appellants:

Jack M. Scanlon, Anaconda, Montana
Garrity, Keegan and Brown, Helena, Montana

For Respondents:

Garlington, Lohn and Robinson, Missoula, Montana

---

Submitted on briefs: January 24, 1979

Decided: MAR 21 1979

Filed: MAR 21 1979

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiffs Albert and Donna Schafer brought this action on April 15, 1977, as parents and natural guardians of Betty Mae Schafer (Betty Mae) for personal injuries arising out of an automobile accident. The State Department of Institutions (the State) answered, alleging affirmative defenses of contributory negligence and supervening cause in addition to general denials of negligence and causation.

On completion of discovery, the State filed a motion for summary judgment on the primary basis that, as a matter of law, none of the acts of the State were negligent nor did they constitute the proximate cause of Betty Mae's injuries. On August 1, 1978, the District Court of the Second Judicial District, Silver Bow County, granted summary judgment in favor of the State. Schafers appeal from this order.

The facts underlying this appeal begin in March 1973. At that time, Betty Mae, the true plaintiff in interest, was committed to the Mountain View School for Girls under order of the District Court of the Third Judicial District. She was then thirteen years old. Both Mountain View School and the Aftercare Services Bureau, responsible for supervising a child after release from Mountain View, are in the Corrections Division of the State Department of Institutions.

Unfortunately, Betty Mae was not an ideal participant in either the Mountain View or Aftercare programs. She repeatedly ran away from Mountain View. When placed in a foster home in Harlem pursuant to a formal Aftercare agreement, she ran away and was, in fact, "kicked out" of that home, returning to Mountain View in October 1974. A 1975 placement in a Job Corps program in Oregon was also unsuccessful because Betty Mae ran away.

In January 1976, Betty Mae was again transferred to the foster home in Harlem. This time, while she had some problems, Betty Mae did obtain a job and, according to Aftercare personnel, her overall behavior improved. In September 1976, she requested and received an authorized leave for a home visit to Anaconda for ten days. According to her deposition, Betty Mae had made such visits previously without incident, always returning when she was supposed to.

This time, however, Betty Mae decided to stay in Anaconda and find a job. She contacted the local Aftercare counselor for an extension of her leave for an additional week until she found a job. The counselor gave her permission to do that. Betty Mae did find a job, but apparently a decision had not yet been made as to the wisdom of allowing Betty Mae to remain in Anaconda. Her parents saw no problem, but both the Deer Lodge County truancy officer and the Anaconda City Police juvenile officer were opposed. No formal modification of the original Aftercare agreement transferring Betty Mae to Harlem was executed.

Betty Mae's activities during this home visit are disputed by the parties. It appears she stayed with her parents for a few days but eventually moved into her sister's apartment. There is also some indication in the record that she frequented local taverns, although the Aftercare workers deny any knowledge of these activities. It does appear undisputed that Betty Mae did attend parties at which she consumed liquor and used drugs.

It was following such a party that the automobile accident giving rise to the instant litigation occurred. On October 18, 1976, after leaving a party, Betty Mae was a passenger in a car driven by Mark Stigen. Stigen was driving

from Anaconda to Butte at night on an icy highway at a speed in excess of 80 miles per hour. He lost control of his vehicle, and it rolled, throwing Betty Mae out. Stigen has admitted driving in a careless and negligent manner. This action was then brought seeking damages for the injuries sustained by Betty Mae.

In its simplest form the issue presented for review is whether the trial court properly granted summary judgment in favor of the State.

The Schafers' theory of the case, and the reason suit was brought against these defendants, is that the State was negligent in failing to properly supervise Betty Mae in allowing her to remain in Anaconda and eventually to be injured in the automobile accident. In support of this theory, Schafers repeatedly cite to Betty Mae's past behavior, to the official reports and recommendations that she be closely supervised at all times, and to the failure of Aftercare to exercise this supervision during the days immediately prior to the accident. From this sequence of events, Schafers would hold the State liable for the injuries Betty Mae suffered.

While we agree that Betty Mae had a history of irresponsible behavior which the State was charged to control, we cannot agree that the responsibility or liability of the State extends to the incident involving or injuries incurred by Betty Mae under the circumstances.

The crux of this case is the element of negligence known as foreseeability. This element serves as a limit on liability for acts which might, under other circumstances, be negligent. The substance of foreseeability as it relates to negligence is that a defendant who could not foresee any

danger of injury from his conduct or any risk from an intervening force is not negligent. Mang v. Eliasson (1969), 153 Mont. 431, 436, 458 P.2d 777, 780. Absent foreseeability, there is no duty; absent duty, there is no negligence.

Foreseeability is measured on a scale of reasonableness; it is not measured abstractly. Ford v. Rupple (1972), 161 Mont. 56, 64, 504 P.2d 686, 691. The perspective is from the time of the allegedly negligent act:

> ". . . in weighing the likelihood of harm, the seriousness of injury and the value of the interest to be sacrificed--the law judges the actor's conduct in the light of the situation as it would have appeared to the reasonable man in his shoes at the time of the act or omission complained of. Not what actually happened, but what the reasonably prudent person would then have foreseen as likely to happen, is the key to the question of reasonableness . . ." Mang v. Eliasson, 153 Mont. at 436-37, 458 P.2d at 781. (Emphasis in original.)

As the law is not concerned with what actually happened, neither is it concerned with mere possibilities:

> ". . . Negligence carries with it liability for consequences which in the light of attendant circumstances could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable." Jackson v. William Dingwall Co. (1965), 145 Mont. 127, 135, 399 P.2d 236, 240.

Applying these principles to the facts of the case at hand, we are unable to see how the State could have possibly foreseen the sequence of events leading to Betty Mae's injuries. The intervening factors of (1) a possibly intoxicated third person (2) driving at night (3) too fast (4) on an icy road resulting in injuries to Betty Mae, who voluntarily chose to be a passenger in the automobile, completely sever any liability for any alleged negligence on the part of the State. To stretch the concept of foreseeability to this extent is to do away with the element entirely and make

the State the absolute insurer of any person under its supervision. Furthermore, with regard to the foreseeability of the acts of third persons, this Court stated in Lencioni v. Long (1961), 139 Mont. 135, 139, 361 P.2d 455, 457:

> "'. . . Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual. . .'"

This statement applies to the foreseeability by the State of Stigen's negligent driving.

Schafer relies on the similar cases of Gibson v. United States (3rd Cir. 1972), 457 F.2d 1391, and Bjornemo v. United States (D. Mont. 1976), No. CV-75-73-BU. These cases are distinguishable on their facts. In both cases, a Job Corps enrollee injured a third person: in Gibson, by plunging a screwdriver through the temple of a Job Corps instructor; in Bjornemo, by smashing a stolen taxi into another vehicle at an intersection. In both cases the United States was held negligent for failing to properly supervise and restrain the enrollees who were known to have behavior problems.

In the instant case, however, it was not Betty Mae who, because of lack of restraint, injured a third party. Instead, she was a "passive" participant in an automobile accident, an event which easily could have occurred no matter what type of supervision the State exercised over her, short of locking her in a room somewhere. Such restrictive detention is not the goal of our juvenile institutions and programs. See section 80-1410, R.C.M. 1947, now section 53-30-202 MCA. Nor do the statutes governing these programs impose such a duty upon them. See sections 80-1401, -1410, R.C.M. 1947, now sections 53-1-201, 53-30-202 MCA.

In short, the fact the accident occurred as it did had no relation to the State's course of action immediately prior to the accident. Betty Mae was showing an apparent improvement in her behavior, had secured proper permission to come to Anaconda for a home visit, and once in Anaconda had received permission to remain and look for a job which she found. Under the circumstances the State could not be called negligent, especially when the purpose of the Aftercare program is to ease the transition from institution to community. Section 80-1414, R.C.M. 1947, now section 53-30-226 MCA. Indeed, the type of accident in which Betty Mae was involved could have happened as easily in Harlem with her foster parents driving as in Anaconda with Mark Stigen driving.

Finally, Schafers argue that the element of foreseeability always creates an issue for the jury and quote the following excerpt from 57 Am.Jur.2d Negligence §205 at 579:

> "Where it is claimed that the defendant's act was not the proximate cause of the injury because the result could not reasonably have been foreseen, it is <u>ordinarily</u> a question for the jury whether the result should reasonably have been foreseen. Even though the facts are not disputed, <u>if there is room for a reasonable difference of opinion</u> as to whether an intervening act was negligent and foreseeable, the question is one for the jury." (Emphasis added.)

Accord, Stenberg v. Beatrice Foods Co. (1978), _____ Mont. _____, 576 P.2d 725, 727, 35 St.Rep. 294, 296. The emphasized portions of this quote point out the weakness of Schafers' argument. We conclude, as did the District Court, that there is no "room for a reasonable difference of opinion as to whether [the State's] act was negligent and foreseeable." If we were to adopt Schafers' position, every negligence case would have to go to the jury, thus eliminating

the summary judgment procedure which is a part of our legal process.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices