No. 85-147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

ALICE EASTERDAY,

        Plaintiff and Appellant,

   -vs-

CHARLES R. CANTY, M.D.,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Second Judicial District,
           In and for the County of Silver Bow,
           The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Rossbach & Whiston; William A. Rossbach, Missoula,
        Montana
        Williams Law Firm, Richard Ranney, Missoula MT.

    For Respondent:

        Poore, Roth & Robinson; Urban L. Roth, Butte,
        Montana
        Williams Law Firm; Richard Ranney, Missoula,
        Montana

_____

Submitted on Briefs: Oct. 10, 1985

Decided: January 16, 1986

Filed: JAN 16 1986

_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

In the proceedings below, Alice Easterday (hereinafter Easterday) brought this action to recover damages for medical malpractice allegedly committed by Dr. Charles R. Canty (hereinafter Dr. Canty). The District Court of the Second Judicial District, Silver Bow County, sitting with a jury, the Honorable Mark P. Sullivan presiding, found for Dr. Canty on the issue of liability. Easterday timely moved for a new trial and that motion, after a hearing, was denied. Easterday now appeals from both the jury verdict in favor of Dr. Canty and the District Court's order denying her motion for a new trial. We affirm the judgment of the District Court entered in favor of Dr. Canty and its order denying Easterday's motion for a new trial.

In August of 1979, Easterday filed a complaint against Dr. Canty and Dr. John Davidson (hereinafter Dr. Davidson). The complaint alleged that the two doctors had committed medical malpractice by failing to properly diagnose and treat Easterday's genetic bone disorder. It should be noted that Easterday was a minor at the time of filing suit and her original complaint was amended to provide for her parents as plaintiffs in their capacity as guardians. Upon obtaining majority, Easterday then pursued the suit in her own name.

Three days prior to trial, in September of 1984, Easterday voluntarily stipulated to the dismissal of Dr. Davidson from the suit. Accordingly, the District Court entered its order of dismissal. On the same day, Easterday also filed a motion in limine requesting that there be no mention at the trial of the compromise and settlement agreement regarding Dr. Davidson.

2

On the first day of trial, counsel for both parties argued before the trial court Easterday's motion in limine regarding Dr. Davidson. Easterday's counsel moved that the trial court exclude any mention of Dr. Davidson's dismissal from the suit, and that the case be retitled "Easterday v. Canty" with no reference to Dr. Davidson's former presence in the suit. Dr. Canty's counsel agreed that Dr. Davidson's name should be taken off the title of the case, but argued that evidence of Dr. Davidson's former presence in the suit was admissible. After hearing the argument, the trial court did not immediately rule on the matter, but stated it would be "taken under advisement and see how it develops."

At trial, before the trial court had ruled on the motion in limine, Dr. Canty's counsel cross-examined Easterday's mother and specifically asked her about the charges originally brought against Dr. Davidson. Easterday's counsel immediately objected. The trial court at first overruled the objection and allowed the questioning to continue, but very shortly thereafter sustained an objection as to the relevance of this line of questioning regarding Dr. Davidson. After the trial court ruled that no further inquiry would be allowed regarding the allegations against Dr. Davidson, Dr. Canty's counsel did not again raise the subject during the remainder of the trial. Easterday's counsel, however, during his redirect examination of Easterday's mother, explored at length the decision to dismiss Dr. Davidson as a party-defendant.

The trial subsequently ran its course and the jury returned its verdict in favor of Dr. Canty on the issue of liability. Easterday filed her motion for a new trial, which was denied by the trial court.

3

Attached to Easterday's motion for a new trial were several affidavits. Other affidavits were later filed by Dr. Canty's counsel. These affidavits concerned the issue of improper external information which allegedly had been received by certain jury members during the course of the trial. The contents of these affidavits basically presented conflicting versions of the conduct of jurors Kathleen Kissock and Shirley Ablonczy. The pertinent affidavits provided in relevant part as follows:

(1) Affidavit of juror Bonnie Handcock: This juror stated that juror Ablonczy had told her that while she (juror Ablonczy) was at the beauty salon, during a recess in the trial, she was told by a hairdresser that Easterday's mother had called the hairdresser complaining about a haircut and had threatened to sue the hairdresser over it. Juror Ablonczy told juror Handcock that she took this information as proof that the parents of Easterday were out to sue anyone.

(2) Affidavit of juror Ablonczy: Juror Ablonczy admitted overhearing a conversation between a hairdresser and another patron that Easterday's mother had threatened to sue the hairdresser, but she stated that she totally ignored these comments in making her deliberations in the instant case.

(3) Affidavit of John Whiston (associate of Easterday's counsel): Mr. Whiston stated that juror Kissock informed him that she was told by a co-worker (allegedly juror Ablonczy), during a recess in the trial, that the co-worker thought the parents of Easterday were suing everyone because the co-worker knew that Easterday's parents were threatening to sue a hairdresser.

4

(4) Affidavit of juror Kissock: Juror Kissock did not specifically deny the allegations made by John Whiston in his affidavit, but she insisted that absolutely no outside influence affected her deliberations in the instant case.

The appellant, Easterday, presents the following two issues for review by this Court:

(1) Whether the evidence of juror misconduct was prejudicial to the appellant and requires a new trial?

(2) Whether the introduction by Dr. Canty's counsel of evidence concerning Dr. Davidson was an irregularity in the proceedings which deprived the appellant of a fair trial?

With regard to the first issue raised by Easterday, we hold the trial court did not abuse its discretion in denying Easterday's motion for a new trial. In cases where a motion for a new trial is predicated upon an allegation of juror misconduct, this Court has applied a stringent standard of review. In Schmoyer v. Bourdeau (1966), 148 Mont. 340, 343, 420 P.2d 316, 317, this Court developed that standard as follows:

> We hold that once the District Court has considered the matter (jury misconduct), however it is raised, whether on a question of mistrial or motion for a new trial this court will not lightly disturb that ruling. To overthrow it this court must be shown by evidence that is clear, convincing, and practically free from doubt, of the error of the trial court's ruling.

Contrary to the argument presented by Easterday, the above standard is still the general rule of this Court where jury misconduct is alleged.

Applying the above standard to the instant case, we find no evidence whatsoever that indicates the trial court erred in denying Easterday's motion for a new trial. Judge Sullivan presided throughout the eight-day trial and became

5

familiar with the trial jurors involved. He also handled the hearing on Easterday's motion for a new trial and became familiar with the affidavits, memoranda, and oral arguments presented by the parties. The record shows the subject affidavits presented to the trial court (many of which contained second-hand hearsay) indicate that the alleged juror misconduct did not affect a material issue in dispute and that Easterday was probably not prejudiced by such conduct. In short, Judge Sullivan's familiarity with the trial and post-trial activities placed him in the unique position to thoroughly evaluate the respective positions of Easterday and Dr. Canty with regard to the alleged juror misconduct. Judge Sullivan considered the information presented to him and ruled that Easterday's motion for a new trial was not meritorious. We find no violation of the standard set forth in Schmoyer.

The second issue raised by Easterday contends that the reference by Dr. Canty's counsel to the prior presence of Dr. Davidson in the lawsuit was inflammatory and prejudicial and requires granting her a new trial. We disagree.

As set out in the facts section of this opinion, Dr. Davidson was one of the original defendants in this lawsuit. Shortly before trial, Easterday, for reasons not explained, entered into a stipulation of dismissal with Dr. Davidson. Easterday then filed a motion in limine asking that any reference to the "settlement and compromise" involving Dr. Davidson be excluded at trial. Counsel for both parties agreed that the caption of the case should be changed to reflect the dismissal of Dr. Davidson, but were unable to agree on whether any mention of Dr. Davidson should be excluded at trial. The trial judge then took the motion under advisement, to see how the trial developed.

6

At the commencement of his cross-examination of Easterday's mother, counsel for Dr. Canty initially avoided any reference to Dr. Davidson's former presence in the lawsuit. However, after a few minutes of questioning, Dr. Canty's counsel brought to the jury's attention the fact that Dr. Davidson had previously been a defendant in the action. Easterday contends that although Dr. Canty's examination of her mother on this subject was very brief, the cat was out of the bag and her right to a fair trial was damaged beyond repair.

We disagree with Easterday's contentions under this issue. Easterday contends that her motion in limine to exclude any mention of Dr. Davidson at trial was based on Rule 408 of the Montana Rules of Evidence (evidence of compromises or offers to compromise are inadmissible to prove liability for or invalidity of a claim). Easterday correctly points out that the policy behind this rule is to encourage compromise and settlement between parties. However, in the instant case, we find no evidence in the record that Dr. Canty's counsel introduced, or attempted to introduce, any evidence of Easterday's settlement with Dr. Davidson. Dr. Canty's counsel only brought to the jury's attention the fact that Dr. Davidson had also been charged in the original complaint. We see no violation of the provisions of Rule 408.

It has long been the rule in this state that party-defendant's may introduce into evidence the allegations set forth in a party-plaintiff's complaint. In Fox v. Fifth West, Inc. (1969), 153 Mont. 95, 100, 454 P.2d 612, 615, this Court developed the following general rule:

> We find too that the court erred in not allowing the appellant to use the original complaint to cross-examine the

> respondent on certain admissions of the respondent. The trial court took the position that because of the pre-trial order the allegations of the complaint had been superseded and the complaint was no longer relevant. Clearly it was error for it has been this Court's position since _Johnson v. Butte and Superior Copper Company_ (citation omitted), that the opposite party is entitled to introduce into evidence inconsistent pleadings relating to the same issue for whatever the jury might find it worth in arriving at the truth of the controversy.

See also McDonald v. Peters (1954), 128 Mont. 241, 272 P.2d 730. Therefore, under this general rule, the allegations set forth in Easterday's complaint charging Dr. Davidson with malpractice are relevant and admissible. Consequently, Dr. Canty's counsel limited cross-examination of Easterday's mother establishing the fact that Dr. Davidson had also been charged in the original complaint was proper.

The judgment of the District Court and its order denying the motion for a new trial are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8