No. 88-305

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

KIMBERLY ANN GRAHAM and SHARON
GRAHAM,

        Plaintiffs and Appellants,

   -vs-

MONTANA STATE UNIVERSITY,

        Defendant and Respondent.

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Blaine,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert D. Morrison; Morrison, Young, Melcher and
Brown, Havre, Montana

    For Respondent:

        James M. Scheier, Agency Legal Services Bureau,
Helena, Montana

Submitted on Briefs: Nov. 17, 1988

Decided: December 30, 1988

Filed:

_____
             Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Kimberly and Sharon Graham appeal from the order of the District Court of the Seventeenth Judicial District, Blaine County, granting summary judgment in favor of Montana State University (MSU). We affirm.

The Grahams present three issues for review:

1. Whether the District Court erred in determining that MSU had no duty to supervise Kimberly Graham as a matter of law.

2. Whether the District Court erred in determining that the risk to Kimberly Graham was unforeseeable as a matter of law.

3. Whether the District Court erred in dismissing Sharon Graham's claim for loss of consortium.

Kimberly Graham (Kimberly) participated in the Minority Apprenticeship Program (MAP) at MSU during the summer of 1984. MAP is designed to encourage minority high school students to pursue careers in the sciences by providing work-related experience in various scientific research taking place at MSU. Kimberly was 16 when she was accepted for the program, and was a student at Hays-Lodgepole High School.

The students in the program lived on-campus in a university dormitory or "residence hall" and worked as research assistants to MSU scientists. MSU hired Vaschelle LaForge as a residence hall advisor/supervisor for MAP participants. Her job was to act as a friend and role model for the MAP students, and to enforce the rules of conduct adopted by MSU for program participants:

> 1. Consumption of alcoholic beverages in any form is strictly prohibited by all MAP participants.
> 2. Be on time to all scheduled activities.

3. Written notice and approval are required from parents and [the program director] before leaving Bozeman any time between initial arrival and the end of the scheduled program (July 27).
4. Not permitted to drive or accept rides in vehicles other than those provided by the Minority Apprenticeship Program staff.
5. Required to be on the assigned residence hall floor by 10:30 p.m. week nights (Sunday-Thursday) and 12:00 a.m weekends (Friday-Saturday) and in own room by 11:00 p.m. weeknights and 12:30 a.m. weekends.
6. No visitors allowed after the 11:00 p.m. curfew weeknights and the 12:30 curfew on weekends.

Failure to comply with any of these rules will result in disciplinary action which may lead to dismissal from the Minority Apprenticeship Program.

A copy of these rules had been provided to the Grahams before Kimberly was actually accepted for the program.

On a Sunday afternoon approximately two weeks after the program began, Kimberly and several other MAP participants obtained LaForge's permission to visit the off-campus residence of Darryl J. Tincher. While it is not settled in the record, there is deposition testimony that a party had been taking place at this residence since the previous evening. LaForge testified in deposition that she did not know of the party.

At the party, Kimberly drank beer and became "a little drunk." Deposition testimony also conflicts as to whether LaForge knew Kimberly was drinking at the party. According to Kimberly's deposition, LaForge came to the residence, saw Kimberly and other MAP students drinking, but took no action. LaForge testified in her deposition that she did not see any drinking by MAP students, and indeed did not enter the house when Kimberly said she did.

At some point in the afternoon, Tincher offered Kimberly a motorcycle ride, which she accepted. They first drove a

3

short distance to a convenience store, where Tincher bought gasoline for the motorcycle and beer. They then proceeded to Big Sky, where they stopped at a bar and drank a total of four mixed drinks between them. On the return trip to Bozeman, Tincher's motorcycle left the highway and hit an embankment. Kimberly was seriously injured. Tincher testified in deposition that he had turned around to speak to Kimberly when the accident occurred.

The Grahams filed suit against Tincher, MSU and the owners of the bar in Big Sky alleging negligence on the behalf of all defendants that caused Kimberly's injuries. MSU moved for summary judgment, arguing (1) MSU owed no duty to Kimberly and (2) any alleged negligence on MSU's part was not the proximate cause of Kimberly's injuries. The District Court granted the motion, and this appeal followed.

The standard for review of a summary judgment is the same as that used by the trial court granting the judgment. In order for summary judgment to issue, the movant must show that there is no genuine issue as to all facts that are material in light of the substantive principles entitling the movant to judgment as a matter of law. Frigon v. Morrison-Maierle, Inc. (Mont. 1988), 760 P.2d 57, 45 St.Rep. 1344.

The basis of the District Court's decision in this case is foreseeability, an element of both duty and proximate cause in negligence cases. The court relied on our decision in Schafer v. State Dept. of Institutions (1979), 181 Mont. 102, 592 P.2d 493. On the question of duty, the Schafer decision stated:

> This element serves as a limit on liability for acts which might, under other circumstances, be negligent. The substance of foreseeability as it relates to negligence is that a defendant who could not foresee any danger of injury from his conduct

4

> or any risk from an intervening force is not negligent. [citation] Absent foreseeability, there is no duty; absent duty, there is no negligence.

Schafer, 592 P.2d at 495. While we agree with the court that foreseeability is an issue on the question of duty in this case, we are troubled by the implications of eliminating a university's duty toward a juvenile such as Kimberly.

The court discounted two arguments put forth by the Grahams in their effort to prove that MSU owed a duty to Kimberly. The Grahams relied on two sections of the Restatement (Second) of Torts. Section 314A(4) of the Restatement imposes a duty to aid or protect on some one who voluntarily takes custody of another under circumstances that deprive the latter of his normal opportunities for protection. Section 323 of the Restatement provides that once some one undertakes to provide some service that imposes a duty toward another person, he will be liable for any failure to exercise due care in carrying out that undertaking.

According to the Grahams, MSU assumed a duty to protect Kimberly because it effectively took custody of her while she participated in the MAP program, thereby eliminating her normal opportunity for parental protection. MSU was also bound to exercise due care in supervising Kimberly and the other MAP participants, a service the university voluntarily undertook by hosting the MAP program.

The two cases central to MSU's argument on this point are Bradshaw v. Rawlings (3d Cir. 1979), 612 F.2d 135, and Beach v. University of Utah (Utah 1986), 726 P.2d 413. Both cases note the demise of the in loco parentis status once occupied by universities, and hold that universities no longer have a special, custodial relationship to their adult

5

students. However, the reasoning employed in both cases shows a distinction between them and the case at bar.

The Bradshaw court found no duty running from the university to Bradshaw, because "[c]ollege students today are no longer minors." The court noted college students' ability to vote, marry, make a will and the like, which had wrought a change in their relationship with universities:

> There was a time when college administrators and faculties assumed a role in loco parentis. Students were committed to their charge because the students were considered minors. A special relationship was created between college and student that imposed a duty on the college to exercise control over student conduct, and, reciprocally, gave the students certain rights of protection by the college.

Bradshaw, 612 F.2d at 139. The Utah Supreme Court cited Bradshaw with favor in Beach, and further noted:

> Elementary and high schools certainly can be characterized as a mixture of custodial and educational institutions, largely because those who attend them are juveniles. However, colleges and universities are educational institutions, not custodial.

Beach, 726 P.2d at 419.

The plaintiff in this case is a minor high school student. When MSU undertook to have Kimberly live on its campus and supervise her during the MAP program, it assumed a custodial role similar to that imposed on a high school because Kimberly is a juvenile. Once MSU assumed that role, it was charged with exercising reasonable care in supervising the MAP participants.

Kimberly testified that LaForge knew there would be drinking at the party, and indeed witnessed MAP participants at the party drinking beer. LaForge denies knowing of or seeing any drinking by MAP participants. Given MSU's

custodial role regarding MAP participants, this is a dispute as to a material fact.

If LaForge did in fact know of or see drinking by minor MAP participants at the party, that knowledge would render her duty immediate. Her failure to act would be a breach of that duty, and could be negligence imputable to MSU if the circumstances warrant. On the other hand, if LaForge did not have actual knowledge of the drinking, the extent of her duty would depend on what she reasonably could foresee as the possible result of allowing the MAP students in her charge to visit Tincher's house.

In contrast to the question of MSU's duty toward Kimberly, foreseeability is dispositive of the question of proximate cause. If the Grahams establish MSU's duty and show that LaForge's inaction amounted to a breach of that duty, they must still prove that the breach was the proximate cause of Kimberly's injuries. Without a showing of proximate cause, a negligence claim fails. 57 Am Jur 2d Negligence § 128.

Simply stated, the record shows that Kimberly's drinking at the party was not the proximate cause of her injuries. Tincher consumed enough alcohol that day to be charged with driving under the influence of alcohol or drugs. He later pled guilty to that charge. Tincher also testified that he was driving with his head turned away from the road in order to talk to Kimberly, who was riding behind him on the motorcycle. Tincher therefore could not see the road ahead, or where the motorcycle was headed. Tincher's actions caused the motorcycle to leave the highway, and were therefore the intervening cause of Kimberly's injuries. Her injuries were not reasonably foreseeable consequences of LaForge's failure to take action regarding Kimberly's drinking.

7

If there is no room for a reasonable difference of opinion as to whether the action of a party other than the defendant is the intervening cause of the plaintiff's injury, summary judgment based on proximate cause is proper. Schafer, 592 P.2d at 496. Tincher's actions leave no question of material fact as to proximate cause in this case. That element of the Grahams' case is missing, and their claims therefore necessarily fail.

We affirm the decision of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices