No. 94-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

THEODORE R. ALLERS,

Plaintiff and Respondent,

-v-

MICHAEL D. RILEY,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kelly M. Wills, Michael C. Prezeau, Garlington, Lohn
& Robinson, Missoula, Montana

For Respondent:

Laurie Wallace, David W. Lauridsen, Bothe &
Lauridsen, Columbia Falls, Montana

Submitted on Briefs: March 16, 1995

Decided: September 5, 1995

FILED

SEP 05 1995

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Appellant Michael Riley (Riley) appeals the decision of the Eleventh Judicial District Court, Flathead County, denying his post-trial motion for a new trial. We reverse and remand for further proceedings consistent with this opinion.

Riley raises the following issue on appeal:

Did the District Court err when it denied Riley's motion for a new trial on the grounds of juror and bailiff misconduct?

This case arises from a traffic accident that occurred near Whitefish, Montana on September 2, 1992. Respondent Theodore Allers (Allers) was injured when the motorcycle he was riding collided with a pickup driven by Riley. The accident occurred when Riley turned left at the same time that Allers was attempting to pass several vehicles, including Riley's pickup. Allers sued Riley, claiming that Riley had been negligent in initiating a turn while Allers was making his pass. Riley answered, denying that Allers' pass had been initiated when Riley started to turn and claiming that Allers had been negligent by attempting to pass in an unsafe manner.

A jury trial began on June 27, 1994. Following deliberations, the jury returned a verdict finding that: (1) Allers suffered $280,000 in damages; (2) Allers was 45 percent comparatively negligent; and (3) Riley was 55 percent comparatively negligent.

After the verdict had been returned, Riley's counsel learned that, during the jury's deliberations, the jury foreperson requested the bailiff to provide a dictionary and that the bailiff

2

complied without informing or obtaining the permission of the court. Riley's counsel interviewed several jurors who confirmed that the bailiff had provided both a legal dictionary and an ordinary dictionary. The jury used the dictionaries to look up the terms "proximate cause" and "prudent." The dictionary definitions relating to causation did not contain the foreseeability element which was contained in Instruction No. 14 given by the District Court.

Both parties obtained affidavits from different jurors regarding the use of the dictionaries. Allers also obtained an affidavit from the bailiff stating that he had provided the jury with the dictionaries. Riley filed a post-trial motion for judgment notwithstanding the verdict or, alternatively, for a new trial. The District Court denied the motions. Riley appeals.

Did the District Court err when it denied Riley's motion for a new trial on the grounds of juror and bailiff misconduct?

Section 25-11-102, MCA, enumerates the grounds upon which a new trial may be granted:

> The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
> (1) irregularity in the proceedings of the . . . jury . . . by which either party was prevented from having a fair trial;
> (2) misconduct of the jury.

In this case, Riley moved for a new trial on the grounds of bailiff and jury misconduct pursuant to subsections (1) and (2) of the statute.

3

On appeal, the parties provide different standards by which this Court should review a district court's grant or denial of a motion for new trial under § 25-11-102(1) and (2), MCA. Allers cites Schmoyer v. Bourdeau (1966), 148 Mont. 340, 343, 420 P.2d 316, 317, in which this Court held:

> [O]nce the District Court has considered the matter [of jury misconduct], however it is raised . . . this Court will not lightly disturb that ruling. To overthrow it this Court must be shown by evidence that is clear, convincing, and practically free from doubt, of the error of the trial court's ruling.

Riley points out that, in reviewing cases like the one at bar, this Court has employed a variety of standards, including a "practically free from doubt" standard, Easterday v. Canty (1986), 219 Mont. 420, 423, 712 P.2d 1305, 1307, and a "clear and convincing" standard, Ahmann v. American Federal Savings & Loan Ass'n (1988), 235 Mont. 184, 191, 766 P.2d 853, 857. Riley requests that we clarify the standard of review.

In the two most recent civil cases in which this Court has reviewed a district court's grant or denial of a motion for a new trial on the grounds of jury and/or bailiff misconduct, we enunciated the following standard of review: The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion. Geiger v. Sherrodd, Inc. (1993), 262 Mont. 505, 508, 866 P.2d 1106, 1108; Henrichs v. Todd (1990), 245 Mont. 286, 291, 800 P.2d 710, 713. We will continue to employ this standard of review when allegations of jury and/or bailiff misconduct are raised as grounds for a motion for a new trial.

4

Those cases which articulate a different standard of review are overruled to that extent.

We will give considerable weight to the determination of the district court because it is in the best position to observe the jurors and determine the potential for prejudice when allegations of jury or bailiff misconduct are raised, and the district court will have significant latitude when ruling on these matters. Easterday, 712 P.2d at 1307; see State v. Gollehon (1993), 262 Mont. 293, 303, 864 P.2d 1257, 1263-64; State v. Eagan (1978), 178 Mont. 67, 76, 582 P.2d 1195, 1200.

Riley and Allers agree that jury misconduct occurred. However, Allers does not agree with Riley that the jury's misconduct materially affected a substantial right of Riley, as required by § 25-11-102, MCA. The District Court found that "[w]ithout invading the jury's decisions [sic] making process to determine that the dictionary definitions affected their deliberations, there is no evidence of any irregularity or misconduct materially affecting the substantial rights of [Riley]."

As to the bailiff's actions, Allers and Riley disagree. Riley asserts that the bailiff's actions went beyond the limits set forth in § 25-7-403, MCA, and thus created an irregularity in proceedings under § 25-11-102(1), MCA. Allers counters that the bailiff's actions did not constitute an irregularity in proceedings because those actions did not materially affect Riley's substantial rights. Allers appears to base that argument on the bailiff's lack of communication with the jury when providing the dictionaries to

5

them.   Section 25-7-403, MCA, provides in pertinent part:

> Unless by order of the court, the officer having [the jury] under his charge must not suffer any communication to be made to them or make any himself, except to ask them if they or two-thirds of them are agreed upon a verdict . . . .

The statute strictly limits the interaction that is allowed between the jury and the bailiff.   In its rationale for denying Riley's motion for new trial, the District Court concluded that, while "it was inappropriate for the bailiff to have complied with the jury's request. . . . " the bailiff nevertheless did not commit any error which substantially affected the right of Riley.   We agree that, by providing the jury with extraneous materials without the permission of the court, the bailiff violated § 25-7-403, MCA. Nevertheless, since we determine that Riley is entitled to a new trial because of the misconduct of the jurors, we need not address further the effect of the bailiff's misconduct as regards Riley's motion for new trial.

We start from the premise that under the Constitution of Montana both the plaintiff and the defendant have a right to a fair trial.   In Putro v. Baker (1966), 147 Mont. 139, 410 P.2d 717, we stated:

> The guiding principle of our legal system is fairness. We must tenaciously adhere to the ideal that both sides of a lawsuit be guaranteed a fair trial.   Sec 27, Art. III, Montana Constitution. [Now Sec 17, Art. II].

Putro, 410 P.2d at 722.   See also Brockie v. Omo Const., Inc. (1992), 255 Mont. 495, 499, 844 P.2d 61, 64.

Riley argues that, pursuant to Putro, jury or bailiff misconduct creates a rebuttable presumption of prejudice.   Putro,

6

410 P.2d at 721. In Putro, a civil case, Putro was injured when the car she was driving collided with the truck that Baker was driving. Two passengers in Putro's car died as a result of the accident. In a separate criminal proceeding, Baker pled guilty to charges of manslaughter. Prior to trial in the civil proceeding, the parties stipulated to exclude any reference to the criminal proceeding. On the day that the civil case was to be given to the jury, an article appeared in the local paper stating that Baker had pled guilty to manslaughter. Baker moved for a mistrial or a new trial on the grounds that at least some of the jurors must have read the article that morning, thereby tainting the verdict. The district court took the motion under advisement and decided to submit the case to the jury and to poll the jury members after they reached a verdict to determine if the article influenced them. When the district court polled the jury, it was discovered that all of the jurors had been exposed to the article because one of the jurors had clipped it out and brought it into the jury room. Several jurors said that they refused to read it before reaching a final verdict. All of the jurors told the district court that the article had no influence on their verdict. The district court then denied the motion for mistrial or a new trial. On appeal, we reversed, stating that we were not satisfied that the article did not prejudicially influence the jury's verdict. Putro, 410 P.2d at 721. We stated:

> It was established early in our law . . . that "if misconduct be shown tending to injure defendant, prejudice to the defendant is presumed, but not absolutely." The presumption may be rebutted by the use

7

of testimony of the jurors "to show facts which prove that prejudice or injury did not or could not occur." But, "this court, however, has never held, and does not now hold, that, if the contact of the juror with outside, prejudicial influences be clearly demonstrated and uncontroverted, the juror may purge himself by testifying that such influences did not affect his judgment in forming his verdict." The ultimate inquiry is for the court to decide upon the facts of each particular case.

Putro, 410 P.2d at 721-22.

Our holding in Putro, with regard to the testimony of jurors, has been qualified, however, because of the 1977 adoption of Rule 606(b), M.R.Evid., which provides that juror testimony--including affidavits and other evidence--that concerns the juror's thoughts, concerns, emotions, statements, mental processes, or any other matter pertaining to the jury's deliberations is inadmissible in determining the validity of the verdict. Under that Rule, a juror may provide testimony in only three circumstances:

[To determine] (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

Rule 606(b), M.R.Evid; Harry v. Elderkin (1981), 196 Mont. 1, 7, 637 P.2d 809, 813.

Here, it is clear from its order denying Riley's motion for new trial that the District Court was cognizant of the restrictions imposed on the use of juror affidavits. The court, in accordance with our case law, determined that, while it could consider such affidavits for the limited purpose of showing that external influences and extraneous prejudicial information were brought to

8

the jury's attention, it was, nevertheless, barred from considering _how_, if at all, such information affected those deliberations or the jury's decision making processes. See Estate of Spicher v. Miller (1993), 260 Mont. 504, 861 P.2d 183; Boyd v. State Medical Oxygen & Supply, Inc. (1990), 246 Mont. 247, 805 P.2d 1282. Since the District Court could not inquire into the jury's thought processes, it concluded that there was no evidence of prejudice-- i.e., that the jury's use of the dictionary definitions affected its determination of proximate cause and cause in fact. Moreover, having declined to presume prejudice, the court concluded that Riley's substantial rights were not affected and that his motion for new trial must be denied.

In determining whether the substantial rights of the complaining party have been affected, we have, however, acknowledged that "[g]enerally, courts in both civil and criminal cases have held that to warrant a new trial, the misconduct must be such that actual or _potential_ injury results to the losing party." _Brockie_, 844 P.2d at 64. (Emphasis added.) In _Brockie_, Brockie's son was killed when the car he was a passenger in skidded near an icy bridge and struck a flasher board that was located in the median. At trial, defendant's expert testified as to the distance between the flasher board and the interstate at the time of the accident. He based his analysis on motion theory and kinematics. Brockie gave no expert testimony to rebut defendant's expert. The location of the flasher board at the time of the accident was pivotal in the case. Affidavits submitted by two jurors stated

9

that the jury foreperson told them that he conducted independent research on motion theory and kinematics and that his research confirmed the defendant's expert's testimony. The district court denied Brockie's motion for a new trial. We reversed, concluding that the district court abused its discretion. We found that the jury foreperson's research, and the report of that research to two other jurors, was misconduct as defined by § 25-11-102(2), MCA. We also found that probable prejudice resulted from that conduct. In essence, the jury foreperson became a witness to the other jurors by corroborating defendant's expert's testimony with reports of his own independent research. Brockie, 844 P.2d at 64-65

The situation in the present case is analogous, and the same result obtains. Here, the jury panel conducted independent research on extraneous material which redefined the critical element of causation by effectively eliminating from Instruction No. 14 any reference to foreseeability. Such conduct is sufficient to demonstrate probable prejudice and potential injury to the losing party. See Brockie, 844 P.2d at 64.

Allers' arguments that the jury did not present any questions to the court regarding foreseeability; that foreseeability was not an element in this case; and that if the court had felt that the element of foreseeability had not been proven it would have granted Riley a new trial, are beside the point. Instruction No. 14 correctly set forth Montana law on causation, and the jury was obligated to determine proximate cause in accordance with that instruction. Foreseeability was an element of proximate cause in

10

the law given to the jury, and the jury was not at liberty to simply ignore the court's instruction and to redefine causation by eliminating the foreseeability element. It is pure speculation to attempt to divine whether, and if so, to what extent the concept of foreseeability entered into the jury's determination of causation. As the District Judge acknowledged, he could not determine the prejudicial effect of the jury's conduct without invading the internal mechanisms of its decision making processes--something that he was precluded from doing under Rule 606(b), M.R.Evid. Since the trial court was barred from inquiring into the jurors' thought processes, there was no practicable method to determine whether the outcome of the trial would have been different had the misconduct not occurred. See Putro, 410 P.2d at 722, and Brockie, 844 P.2d at 64.

As Riley points out in his brief on appeal:

> This was a difficult case, involving complex issues of negligence, causation, and comparative negligence. The jury deliberated for nearly seven hours, and it is clear that it struggled with the evidence and the law, ultimately finding that Riley's negligence exceeded Allers's negligence by only 10%.

In Putro, we stated that a rebuttable presumption of prejudice exists when jury misconduct stems from extraneous influence; that the misconduct in question must show a "natural tendency" to prejudice; and that the presumption is not absolute. Putro, 410 P.2d at 721-22. As we have indicated above, our discussion in Putro has been somewhat qualified by the adoption of Rule 606(b), M.R.Evid., and by our interpretations of that Rule. However, given the facts of this case, we conclude that there was, at the very

11

least, a reasonable probability that the jurors' misconduct influenced their decision; that probable prejudice and potential injury was apparent from the fact that the jury used extraneous materials--two dictionaries--to redefine a critical element of this negligence case--proximate cause--that was already correctly defined in the court's instructions; and that, as a consequence, Riley's substantial rights were compromised along with his constitutional right to a fair trial.

While not dealing with juror misconduct, we, nevertheless, made an observation in a case involving improper argument of counsel that is germane to our resolution of the issue raised here. In Kuhnke v. Fisher (1984), 210 Mont. 114, 126, 683 P.2d 916, 922, we observed that there is no way to measure how a prejudicial argument may affect an adverse party. We stated that "[t]he only way to be sure which, if any, of the defendants should be exonerated or whether plaintiff should recover at all is to grant a new trial." Kuhnke, 683 P.2d at 922. See also Putro, 410 P.2d at 722, where this Court stated:

> [W]e also realize that unexplained prejudicial references to important matters in litigation may have a "natural tendency" to infect the proceedings with an unfairness that can be corrected only by starting anew the legal contest.

Similarly, the prejudice to a party occasioned by the jurors taking it upon themselves to redefine a term of art in a critical jury instruction from their review of extraneous materials can hardly be measured either--especially where the trial court is barred by rule from obtaining the very evidence that might resolve that issue one

12

way or the other. The only cure for such mischief and for the potential prejudice and injury resulting therefrom is to grant a new trial.

Accordingly, we hold that the District Court manifestly abused its discretion in denying Riley's motion for new trial, and we reverse and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice Fred J. Weber signed the majority opinion on June 20, 1995.

13

Justice William E. Hunt, Sr., dissenting.

I dissent from the majority opinion.

I do not disagree with the majority's analysis concerning the misconduct of the bailiff and the jury in this case; and I agree that both parties are entitled to a fair trial; and that it may always be difficult to determine whether or not that misconduct was prejudicial to one or both parties.

What I have trouble with is the conclusion reached by the majority that the District Court committed a manifest abuse of discretion by not granting a new trial in this case. The District Court found that there was misconduct, but that none of Riley's substantial rights were materially affected by the misconduct of the jury. We have stated that "[n]ot every act of jury misconduct . . . mandates a new trial." Erickson v. Perrett (1977), 175 Mont. 87, 91, 572 P.2d 518, 520. When the jury requested and examined a dictionary for a definition, I do not find a material affect on Riley's substantial rights resulting from this misconduct.

The District Court stated in its rationale for denying Riley's motion for a new trial that "[i]t was inappropriate for the bailiff to have complied with the jury request . . . ." It was inappropriate, but I agree with the District Court that not every act of bailiff misconduct will mandate a new trial. See Ahmann, 766 P.2d at 857. The record in this case does not show that any of Riley's substantial rights were materially affected by the bailiff's actions.

14

The inquiry for courts is whether the misconduct was such that actual or potential injury occurred to the losing party, materially affecting their substantial rights. Brockie v. Omo Construction (1992), 255 Mont. 495, 498-99, 844 P.2d 61, 64.

In this case, the District Court found no evidence of prejudice to Riley. In a review of the dictionary definitions in question, I do not find them to be prejudicial. They do not show a "tendency to injury." The record indicates that the District Court examined the definitions in the context of the surrounding circumstances and satisfied itself that Riley was not prejudiced. The court reached this conclusion from the advantage of its position at the trial, and from that position, properly concluded that there was no material affect on substantial rights by actual or potential injury. I do not find a manifest abuse of discretion by the District Court, and therefore, I conclude that the District Court should be affirmed.

_____
Justice

Justice Terry N. Trieweiler joins in the foregoing dissenting opinion.

_____
Justice

15

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

Reversing the jury's verdict which was arrived at following four days of trial and seven hours of deliberation is no insignificant matter. It should never be done based on purely academic notions of technical irregularity which had no bearing on the outcome of the case. Yet, that is exactly what the majority has done in this case.

The defendant complains because the jury, in its conscientious effort to resolve the issues in this case on their merits, referred to the dictionary for a definition of proximate cause. However, the only discrepancy between the dictionary definition and the court's Instruction No. 14 was that the dictionary definition did not include a discussion of foreseeability. That fact made absolutely no difference to the outcome in this case, because foreseeability was not an issue in this case. It was not even mentioned in the issues as framed in the pretrial order, and obviously did not come up during the course of the trial. Not only has the appellant failed to cite this Court to any fact in this case which would have made foreseeability an issue, the appellant has not even provided this Court with a transcript of the District Court proceedings so that this Court could, on its own, examine the record to conclude whether foreseeability was an issue. None of that, however, is a deterrent to the majority's determination to make an example of this bailiff and this jury by reversing a

16

substantial verdict over an issue that had absolutely nothing to do with the case.

The majority pontificates that "[i]t is pure speculation to attempt to divine whether, and if so, to what extent the concept of foreseeability entered into the jury's determination of causation." Then, with absolutely no reference to the record, no suggestion of how foreseeability might have been an issue in this case, and no discussion of the actual issues in this case, the majority concludes that there was "a reasonable probability that the jurors' misconduct influenced their decision . . . ." Frankly, this is a shocking misapplication of the law that pertains to appellate review.

The only record presented to this Court on appeal consisted of the pleadings and the jury instructions. The pleadings give absolutely no indication that foreseeability was an issue in this case. The majority may feel good because they have sent a message to this bailiff and this jury. However, the only person really affected by this decision is the prevailing party who had nothing to do with the misconduct. In the process, the losing party is rewarded because of "misconduct" which had absolutely no bearing on the outcome of this case. As it turns out, the best thing that happened to the defendant in this case was when the jury tried to figure out what proximate cause meant.

It is in recognition of the time and effort that goes into the jury process that two important rules control our review of jury verdicts in civil cases. First, a verdict should never be reversed

based on an irregularity or misconduct unless the act complained of materially affects the substantial rights of the aggrieved party. Second, in arriving at the first determination, the law acknowledges that the district judge who sat through the trial and personally observed and heard the evidence is in the best position to determine whether an irregularity or misconduct adversely affects one of the parties.

Therefore, we have established the rule that the decision to grant or deny a motion for new trial on one of these bases is within the sound discretion of the trial judge and will not be disturbed absent a manifest abuse of that discretion. In this case, I conclude that neither requirement has been established.

Furthermore, it bears repeating that this Court has not even been provided the benefit of a transcript of the District Court proceedings. The majority does not know what testimony was given. The majority is unaware of any arguments that were made to the jury. The majority does not know what motions were made to the District Court, nor the factual bases for those motions. Yet, it has concluded that it knows, better than the District Judge, whether this admittedly improper conduct was prejudicial to the defendant.

It occurs to me that the only prejudice that occurred in this case, occurred when the District Court gave its Instruction No. 14 which pertained to proximate cause and was mandated by our decision in *Kitchen Krafters, Inc. v. Eastside Bank* (1990), 242 Mont. 155, 789 P.2d 567. That instruction is a convoluted, incomprehensible and irrelevant

18

description of an abstract legal notion which did not belong in the jury instructions in the first place. To suggest that one of the parties was prejudiced when the jury tried to overcome this considerable judicially-created obstacle by trying to understand the relatively simple concept of causation through other means, carries the detached, misguided and esoteric notions of *Kitchen Krafters* to a new extreme.

The District Court instructed the jury on the subject of proximate cause in its Instruction No. 14. The affidavits of the jurors indicate that they sought guidance from dictionary definitions of proximate cause because of their inability to understand Instruction No. 14. However, the only discrepancy between the dictionary definitions and the court's instruction which is complained of by the defendant is the fact that the dictionary definitions do not include the concept of "foreseeability." I conclude that the absence of foreseeability in the dictionary definitions created absolutely no prejudice to the defendant for the following reasons.

First, foreseeability was not an issue in this case. This case was not, as suggested in the majority opinion, a complex form of litigation. It was a simple motor vehicle accident involving two vehicles, two drivers and one collision. The plaintiff accused the defendant of making an improper left hand turn. The defendant accused the plaintiff of making an improper pass. There is no indication from the meager record presented to us that either party ever argued that if he had done what he was accused of doing, harm

19

to another person was unforeseeable. In fact, the contentions and issues raised in the pretrial order never even discuss the issue of proximate cause, much less the sub-issue of foreseeability. The issues were set forth in the pretrial order as follows:

## ISSUES OF FACT

The following issues of fact and no others remain to be litigated upon the trial:

1. Whether the September 2, 1992, accident was caused by Defendant's negligence.

2. Whether the September 2, 1992, accident was caused by Plaintiff's negligence.

3. The percentage of fault or negligence attributed to each party, if any, which was a cause of the September 2, 1992, accident.

4. The amount of money, if any, to which Plaintiff is entitled to compensate him for his damages.

The majority's concern, therefore, about foreseeability is much to do about nothing.

Second, if either party did what he was accused of doing, foreseeability was assumed as a matter of law. Therefore, it was unnecessary to instruct the jury on the issue of foreseeability in the first place. For example, Riley was accused of making an unsafe turn in violation of § 61-8-336, MCA. Allers was accused of making an unsafe pass, which would be a violation of § 61-8-325, MCA.

[W]e have long been committed to the doctrine that the violation of a statute enacted for the safety of the public is negligence *per se* . . . .

*Kudrna v. Comet Corp.* (1977), 175 Mont. 29, 39, 572 P.2d 183, 188.

20

In this case, the jury was specifically instructed that violation of motor vehicle laws is negligence per se, and it found that both parties were negligent. Negligence has four elements: (1) duty; (2) breach of duty; (3) causation; and (4) damages. However, there can be no "duty" unless harm from an act or omission is "foreseeable." As we stated in *Shafer v. Department of Institutions* (1979), 181 Mont. 102, 105, 592 P.2d 493, 495:

> The crux of this case is the element of negligence known as foreseeability. This element serves as a limit on liability for acts which might, under other circumstances, be negligent. The substance of foreseeability as it relates to negligence is that a defendant who could not foresee any danger of injury from his conduct or any risk from an intervening force is not negligent. *Mang v. Eliasson* (1969), 153 Mont. 431, 436, 458 P.2d 777, 780. <u>Absent foreseeability, there is no duty; absent duty, there is no negligence</u>.

(Emphasis added.)

When we have held, as we have on many occasions in the past, that violation of a motor vehicle statute is negligence as a matter of law, we have held that such a violation constitutes a breach of each motorist's duty to others. By concluding as a matter of law that violation of a motor vehicle statute is a breach of duty, we have held as a matter of law that injury to others is foreseeable from such a violation. Therefore, it was completely unnecessary to re-instruct the jury on the subject of foreseeability as an element of causation. It was not only unnecessary, it caused confusion which should have been avoided if this case was to be decided on its merits. For these reasons, the jury's mere consultation of other definitions which did not include the concept of

21

"foreseeability" could not possibly have prejudiced the defendant. To hold otherwise ignores the simple reality presented by the facts in this case and the common law by which it must be decided.

Finally, I conclude that the *Kitchen Krafters'* proximate cause instruction is itself prejudicial to any party charged with proving causation. It is redundant with regard to the subject of "foreseeability" which is already implicit in the negligence instructions; the subject of "foreseeability" is more appropriately dealt with under the issue of negligence; the concept is incomprehensible to the average jury; and by perpetuating this practice (which to my knowledge is unique to this jurisdiction), this Court has made it more difficult to resolve civil claims on their merits. Therefore, it is time for the Court to admit that it made a huge mistake when, in its *Kitchen Krafters* case, it imposed upon the district courts of this state the obligation to interject archaic, redundant and most often irrelevant legal notions into instructions to a lay jury on an issue which in most cases is relatively simple and can be decided based on common sense.

In a negligence action, such as this one, the subject of foreseeability is repetitious of the duty imposed under the standard negligence instruction which provides that:

> Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. <u>A person is negligent if he fails to act as an ordinarily careful person would act under the circumstances</u>.

(Emphasis added.)

22

How an ordinarily careful person would act under the circumstances takes into consideration whether or not harm to someone is foreseeable.

The fact that discussion of "foreseeability" as part of proximate cause results in repetition is evident from our earlier cases which, as already mentioned, include foreseeability as an element of the "duty" which has to be present before negligence can be found.

For example, in *Shafer v. Department of Institutions* (1979), 181 Mont. 102, 592 P.2d 493, the victim was on leave from the Mountain View School for Girls when she was involved in an automobile accident and injured. The state was sued under the theory that Mountain View was negligent by failing to properly supervise the victim. We held that the state was not negligent, based upon unforeseeability of the manner in which the injury occurred. However, we did not do so under a discussion of "proximate cause" but rather under the discussion of the defendant's "duty." In addition to the previously quoted language, we stated that:

> Foreseeability is measured on a scale of reasonableness; it is not measured abstractly. *Ford v. Ruple* (1972), 161 Mont. 56, 64, 504 P.2d 686, 691. The perspective is from the time of the allegedly negligent act:
>
> > . . . in weighing the likelihood of harm, the seriousness of injury and the value of the interest to be sacrificed--the law judges the actor's conduct in the light of the situation as it would have appeared to the reasonable man in his shoes at the time of the act or omission complained of. Not what actually happened, but what the reasonably prudent

person *would then have foreseen as likely to happen,* is the key to the question of reasonableness. *Mang v. Eliasson*, 153 Mont. at 436-37, 458 P.2d at 780.

*Shafer*, 592 P.2d at 495.

Foreseeability was also imposed as an element of duty in *Pretty on Top v. City of Hardin* (1979), 182 Mont. 311, 597 P.2d 58. In that case, we pointed out that:

> Actionable negligence arises only from a breach of legal duty, and to sustain an action for damages resulting from negligence, the complaint must allege the duty, its breach, the damages, and that the breach of duty was the proximate cause of the injury. *Ritchie v. Northern Pacific Railway Co.* (1954), 128 Mont. 218, 272 P.2d 728. Related to these basic rules of negligence law is the rule that a defendant who could not reasonably foresee any danger of direct injury resulting from his conduct or any risk from an intervening force is not negligent. *Mang v. Eliasson* (1969), 153 Mont. 431, 458 P.2d 777.

*Pretty On Top*, 597 P.2d at 60.

As a result of these cases, in combination with the *Kitchen Krafters* decision, we now analyze foreseeability in determining whether there is negligence, and then re-analyze foreseeability in determining whether there was "proximate cause."

Many courts have eliminated this redundant analysis and simplified the jury's responsibility by limiting the analysis of foreseeability to a determination of whether there is negligence in the first place, and then dealing with cause as simply cause-in-fact. Two of the jurisdictions in our own area which have done so are the states of Washington and Oregon.

24

In *Rickstad v. Holmberg* (Wash. 1969), 456 P.2d 355, the Washington Supreme Court stated that:

> The better considered authorities do not regard foreseeability as the handmaiden of proximate cause. To connect them leads to too many false premises and confusing conclusions. Foreseeability is, rather, one of the elements of negligence; it is more appropriately attached to the issue of whether defendant owed plaintiff a duty, and, if so, whether the duty imposed by the risk embraces that conduct which resulted in injury to plaintiff. The hazard that brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably, and with respect to which defendant's conduct was negligent. *See* Restatement (Second) of Torts § 435 comment c (1965). . . .
>
> It is the misuse of foreseeability--that is, discussion of the improbable nature of the accident in relation to proximate cause--that led the trial judge, in the instant case, to conclude that the challenge should be sustained.

*Rickstad,* 456 P.2d at 358.

The comment in the Restatement (Second) of Torts referred to in the Washington opinion is part of the Restatement's analysis of foreseeability under its section on causation. The authors there state:

> Strictly, the problem before the court is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm from the hazard in question. (See § 281, comment e, and § 449.) However, courts frequently treat such problems as problems of causation. (See § 281, comment e, and § 430, comment a.)

Restatement (Second) of Torts § 435, comment c (1965).

How to deal with foreseeability in the jury instructions when analyzed as part of "duty" is illustrated in *Wills v. City of Vancouver* (Wash. 1970), 467 P.2d 292.

25

Similar analyses in Oregon occurred in *Sworden v. Gross* (Ore. 1966), 409 P.2d 897, and *Brennan v. City of Eugene* (Ore. 1979), 591 P.2d 719.

I agree with the Washington court that the better reasoned authorities address foreseeability as part of their analysis of "duty" rather than "proximate cause." In addition to the Restatement (Second) of Torts, W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 43 (5th Ed. 1984), states as follows:

> *Negligence*, it must be repeated, is conduct which falls below the standard established by law for the protection of others against unreasonable risk. It necessarily involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to the danger. If one could not reasonably foresee any injury as the result of one's act, or if one's conduct was reasonable in light of what one could anticipate, there would be no negligence, and no liability. . . .
>
> . . . At the risk of becoming wearisome, it must be repeated that the question is primarily not one of causation, and never arises until causation has been established. It is rather one of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. In so far as the defendant is held liable for consequences which do not lie within the original risk which the defendant has created, a strict liability without fault is superimposed upon the liability that is logically to be attributed to the negligence itself. It is simpler, and no doubt more accurate, to state the problem in terms of legal responsibility: [I]s the defendant legally responsible to protect the plaintiff against such unforeseeable consequences of the defendant's own negligent acts? . . . Whether there is to be such legal responsibility is a matter of policy, of the end to be accomplished; and when we say, for example, that the defendant is or is not under a "duty" to protect the plaintiff against such consequences, "duty" is only a word with which we state our conclusion and no more.

Prosser and Keeton on the Law of Torts § 43 at pp. 280-81.

26

The classic case in this country that dealt with the issue of foreseeability was *Palsgraf v. Long Island Railroad Co.* (N.Y. 1928), 162 N.E. 99. In the majority opinion authored by Justice Cardozo, liability was defeated because the injury that was alleged was "unforeseeable." However, the issue of foreseeability was considered in the court's analysis of whether or not the defendant had a duty to the plaintiff. In summarizing that decision, Prosser and Keeton state:

> In this situation Judge Cardozo, speaking for a majority of four, held that there was no liability, because there was no negligence toward the plaintiff. Negligence, he said, was a matter of relation between the parties, which must be founded upon the foreseeability of harm to the person in fact injured. The defendant's conduct was not a wrong toward her merely because it was negligence toward someone else. She must "sue in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another."

Prosser and Keeton on the Law of Torts § 43 at p. 285.

I believe that we can accomplish the same social objectives for which the requirement of foreseeability was established without dealing with the issue redundantly and thereby unnecessarily complicating the resolution of disputes. The way to do so is to deal with the issue of foreseeability in the analysis of negligence alone.

For all of these reasons, then, I conclude that there was no prejudice to the defendant by the jury's consideration of definitions of proximate cause which did not include the concept of "foreseeability." Furthermore, because there was no prejudice to

27

the defendant, the District Court did not manifestly abuse its discretion when it denied the defendant's motion for new trial.

In summary, § 25-11-102, MCA, provides that a new trial may only be granted when the complaining party's "substantial rights" have been materially affected by an irregularity in the proceedings or misconduct of the jury. Rule 61, M.R.Civ.P., provides that:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. <u>The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.</u>

(Emphasis added.)

We have repeatedly held that we will not reverse jury verdicts or decisions of the district court based on error which was harmless. *R. H. Grover, Inc. v. Flynn Ins. Co.* (1989), 238 Mont. 278, 284-85, 777 P.2d 338, 342; *Giles v. Flint Valley Forest Prods.* (1979), 179 Mont. 382, 387-88, 588 P.2d 535, 538-39. The majority in this case has, however, established a new rule. That rule seems to be that if the conduct complained of by the aggrieved party is offensive enough to the majority, then the absence of prejudice is irrelevant. Since symbolic messages are not the true function of this Court, I dissent from that course of action.

Aside from the legal analysis set forth above, the most amazing thing to me about the result arrived at by the majority is

28

that without the benefit of having heard the evidence or even reviewed a transcript of the evidence, it holds as a matter of law that the District Court Judge who heard all of the evidence manifestly abused his discretion when he held that:

> This court determines that any influence the dictionary definitions may have had on the jury did not affect the rights of the defendant.

Under the circumstances in this case, this decision renders a three to four-day trial, the service performed by a jury, and the role of the District Court all meaningless.

For these reasons, I dissent from the majority opinion.

_____
                     Justice

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

_____
                     Justice

29

September 5, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Kelly M. Wills, Michael C. Prezeau
GARLINGTON, LOHN & ROBINSON
Box 7909
Missoula MT 59807-7909

Laurie Wallace
BOTHE & LAURIDSEN, P.C.
Box 2020
Columbia Falls MT 59912-2020

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy